# J. BARTLETT *vs.* THE TOWN OF NOTTINGHAM.

When a latent ambiguity arises upon any written instrument, involving the question who was intended by certain terms which are equally well applicable to several persons, such question is a mere question of fact, and as such may be submitted to the determination of a jury.

ASSUMPSIT for certain services done and performed for the town of Nottingham, between the first day of June, 1835, and the first day of March, 1836, at the request of Joseph Cilley.

The cause was tried at October term, 1836, upon the general issue, and a verdict returned in favor of the plaintiff.

At a town meeting holden on the 12th March, 1833, Joseph Cilley was appointed agent for the town, to appear and answer to a certain petition of Ezekiel James and others, which was then pending in the court of common pleas in this county, and the prayer of which was that a highway might be laid out and established on a certain route through said town of Nottingham.

At the January term of the court of common pleas, 1834, a highway was laid out and established through the town, according to the prayer of the said petition.

At a town meeting holden in March, 1834, it was voted that the selectmen be the agents of the town for the year ensuing.

At a town meeting holden on the 18th December, 1834, the town voted to discontinue the highway in Nottingham,

laid out as aforesaid on the petition of Ezekiel James and others, and to authorize "the agent" to petition in behalf of the town the next court of common pleas, for their consent to such discontinuance.

Under this last vote Cilley took measures to procure the assent of the court of common pleas to the discontinuance of the said highway; and the plaintiff was employed by him in the business, and performed the services mentioned in the declaration.

It appeared that the services performed by other individuals, at the request of Cilley, in the same business, had been charged to the town and allowed without objection.

On the part of the town it was contended, that Cilley's agency expired in January, 1834, when the petition of James and others, to which he had been authorized to answer, was determined; and that the words, " *the agent,*" in the vote of December, 1834, must necessarily be understood to refer to the selectmen, who were the agents of the town at that time.

But the court directed the jury, that in order to ascertain whether Cilley was authorized to employ the plaintiff on behalf of the town, they must recur to the evidence on that subject, and particularly to the vote of December 18, 1834; and if they were satisfied that the words, " *the agent,*" in that vote, referred to Cilley, he was thereby made the agent of the town for the purpose of procuring the assent of the common pleas to the discontinuance of the highway; and had authority to employ the plaintiff in behalf of the town to do the services for which the action was brought.

The defendants moved for a new trial, on the ground of a misdirection to the jury, in matter of law.

*Stickney*, for the plaintiff.

*Emery*, and *Bartlett*, for the defendants.

RICHARDSON, C. J., delivered the opinion of the court.

The question between the parties in this case on the trial was, whether Cilley had authority to employ the plaintiff on behalf of the town to do the services mentioned in the declaration; and the decision of this question depended upon another, which was, whether the words, *"the agent,"* in the vote of the town on the 18th December, 1834, referred to Cilley or to the selectmen?

On the part of the town it is insisted, that the agent mentioned in the vote must necessarily be the selectmen, because at that time the town had no other agents; and that the jury ought to have been so instructed.

On the other side it is urged, that if the selectmen had been intended, they would have been specially named; that at all events, the term agent, in the singular number, would not have been used if the three selectmen had been intended; that as the business of the agent to be appointed was to procure the discontinuance of a highway which had been laid out and established a short time before, the term agent in the singular number much more naturally refers to Cilley, who had been the agent of the town, to oppose the laying out of that highway, than to the selectmen, who at the time of the vote were the general agents of the town; but that, at all events, who was intended was a question of fact, which had been properly submitted to the jury.

The question now to be settled is, whether it was properly submitted to the jury to say who was intended by the term *"agent"* in that vote?

The general rule is, that the construction of all written instruments is matter of pure law, in all cases where the meaning and intention is by law to be collected from the instrument itself. And no parol evidence is admissible to limit, extend, contradict, or in any way vary the terms used in an instrument, nor to explain any ambiguity in them which is apparent on the face of the instrument. *4 N. H. R.* 21, *Webster* vs. *Atkinson.*

But it sometimes happens, that where the terms of an instrument are clear and free from all ambiguity in themselves, extrinsic oral evidence becomes necessary, to assist in ascertaining the particular subject matter to which they relate ; and however clear and distinct the terms may be in themselves, it is found in some cases that the objects to which they may be applied, are not equally so ; but two or more objects are found in fact to exist, to each of which the terms used are properly applicable. And in such cases there arises what is called a latent ambiguity.

It is well settled, that when the extrinsic evidence introduced to show the particular subject matter to which the terms refer, shows only one subject to which the terms can be fairly applied, no parol evidence is admissible to enlarge or restrain the unambiguous and intelligible terms used, or to explain the intention of the parties to the instrument.

The case of *Jackson* vs. *Sill*, 11 *Johnson* 201, affords a good illustration of the application of this rule. That was an action of ejectment, for land in Watervliet. It appeared that Cornelius Glen, being seized of a farm in Watervliet, which was then under his own occupation, and of another farm in the same place, being the farm in controversy between the parties, which was then in the occupation of a tenant, on the 28th August, 1809, by will devised the farm he then occupied to his wife during her widowhood, and gave the remainder in the same farm to J. L. Sill, the defendant in that suit.

He then gave all the residue of his real estate to trustees, under whom the lessors of the plaintiff claimed the land in controversy.

There was no doubt as to what land the testator occupied at the time he made his will. But the defendant offered to prove that the testator, in giving instructions to the person who drew the will, repeatedly and unequivocally declared that he intended to give to his wife, during her widowhood, all his real estate in Watervliet, with remainder to J. L. Sill,

and that the person who drew the will supposed that the testator was in the occupation of all his land in that place as one farm, and under this impression drew the will to carry into effect the declared intention of the testator.

But there being no ambiguity with respect to the lands to which the terms used were applicable, it was decided that no evidence of a declared intention of the testator could be received to extend the meaning of those terms, and the evidence was rejected. 3 *Taunton* 147, *Doe* vs. *Oxenden ;* 11 *East* 441, *Doe* vs. *Brown ; Talbot's Cases* 240, *Brown* vs. *Selwin.* But when the extrinsic evidence shows that there are two or more subject matters to which the terms used may apply, then what is called a latent ambiguity arises—and the question, which was the particular subject to which the terms were intended to be applied, becomes a question of fact, which like other questions of fact may be submitted to the determination of a jury.

The application of this rule, and the nature of the question which arises under it, are well illustrated by the example put by Lord Coke, in *Cheyney's case,* 4 *Coke* 68. The case put is this : A man devises his land by his will in writing to his son John generally, and dies. It turns out, in fact, that at the time of making his will he had two sons, both baptized by the name of John. It is now apparent that although the terms of the will are clear and plain, an ambiguity has arisen as to the person to whom they were intended by the testator to apply.

Coke says, that in such a case he shall have the land whom the father intended to advance with it ; and that the younger son may, in pleading or evidence, allege the devise to him ; and if it be denied, he may produce witnesses to prove his father's intent ; and that the father thought the other to be dead, or that at the time of the will made he named his son John the younger, and the writer left out the addition of *younger.* And if it cannot be proved whom the father did intend, the will is void for uncertainty.

It is thus manifest, that when a latent ambiguity arises upon any written instrument, the question to be determined is a question of intention, depending upon extrinsic evidence —a mere question of fact, which, when arising upon the trial of a cause with a jury, must be submitted to the jury to determine. 1 *W. Bl. R.* 60, *Jones* vs. *Newman;* 6 *D. & E.* 671, *Thomas* vs. *Thomas;* 2 *N. H. R.* 369, *Claremont* vs. *Carlton.*

We are, therefore, of opinion, that the question, who was intended by the term, " agent," in the vote of the town, was properly submitted to the determination of the jury, and that there must be　　　*Judgment on the verdict.*