MARTIN C. BROWN *v.* RUFUS HUTCHINSON.

The validity of the proceedings, in regard to particular land taxes under the statute in force in 1787 and 1788, considered.

THIS was an action of trespass for three pine logs. Plea, general issue, and trial by jury.

- Upon the trial in the county court, the plaintiff proved that he cut the logs in question on lot No. 8, in the division of the town of Worcester, drawn to the right of William Ashbridge, and after he had drawn part of them to the mill the defendant took and converted them to his own use.

The defendant gave in evidence an original writ in his favor against one Araunah Spear, with the officer's return thereon, and proved that the logs were taken by virtue of said writ, by the officer, he himself acting as assistant to the officer. He also proved that, in the summer and fall of 1831, before the plaintiff cut the logs, said Spear went into possession of said lot by cutting the trees growing on two acres, and cutting off the limbs. The plaintiff cut the logs in December, 1837.

The defendant also gave in evidence a deed from Daniel Spencer to said Spear, dated the 18th of July, 1836, and recorded the 3d of September, 1836, of the same land, and proved that the possession of the lot was vacant until Spear took possession.

The plaintiff then gave in evidence a copy of the charter of the town of Worcester—an act of the legislature of this state, passed November 8, 1792, assessing a tax of one penny upon each acre of land in the towns of Morristown, Sterling and Worcester, for the purpose of making and repairing public roads and bridges in said towns; the money raised upon the lands in Morristown and Sterling to be laid out under the direction of a committee named in the act, for that purpose, who resided in Morristown; and the money raised upon the lands in Worcester to be laid out and expended under the direction of another committee, consisting of three persons, who were authorized to issue their warrant to Martin Elmore to collect the tax raised on the lands in Worcester, and the collectors of said tax were, by said act, severally empowered to sell so much of any delinquent owner's land

as would be sufficient to pay such delinquent's tax and legal costs, after advertising the same, as required by an act "entitled an act regulating the disposition of moneys raised by tax on land in the several towns for the purpose of making roads," &c. passed March 8th, 1787, and the act in addition thereto, passed October, 1788, by which last mentioned acts the said collectors were to be governed in collecting, accounting for, and disposing of said money.

The plaintiff produced the original newspapers in which the committees' and collectors'advertisements were published.

The advertisement of the committees recited that a tax of one penny on each acre of the lands in said towns, (public rights excepted,) had been granted by the legislature, &c.,and the proprietors and land owners of said towns were therein notified to pay said tax, in labor on the roads in said towns, any time between the 13th of August and the 13th of November then next, and to make application to said committees for that purpose; which advertisement was signed, first, by the committee for Worcester, and then by the committee for Morristown & Sterling, and was published in "Spooner's Vermont Journal," three weeks successively, the last of which publications was on the 29th of July, 1793.

The plaintiff also gave in evidence a certificate from the clerk of Chittenden county court, showing that two of the committee for Worcester, at the September term of said court, 1795, presented to said court an account of work done on the roads in Worcester under the direction of said committee and by virtue of the act laying said tax, which account was approved by said court, and allowed at eighty nine pounds, lawful money, and filed among the files of said court.

The advertisement of Martin Elmore, the collector of the tax for Worcester, was dated January 15th, 1796, and was a notice to the proprietors and land owners of said town, who had not paid said tax, that, unless the same was paid to said collector before the second Wednesday of June then next, so much of their lands would be sold at public vendue at said collector's dwelling house in Elmore, at 10 o'clock in the forenoon of said day, as would pay said tax and legal costs.

The plaintiff then offered Martin Elmore as a witness, who

was objected to on the ground of interest, which objection was overruled by the court, and said Elmore produced a rate bill, which, he testified, was made up at the time of his entering upon his duties, from which it appeared that the tax on the land in question had not been paid, at the bottom of which rate bill was the following certificate:

" This may certify that the foregoing is a true rate bill.

MARTIN ELMORE, Collector."

He also produced the proceedings of his sale, certified by him, and which, he testified, was correct, and that the sale was held at his own dwelling house in Elmore on the 8th day of June, 1796 ; that the town of Worcester, at that time, had not been surveyed and allotted.   No other papers were produced in support of the sale.   It appeared that the land in question was sold to Job Gibbs.

The plaintiff also gave in evidence copies of deeds from Martin Elmore, as collector, to Job Gibbs, and from Job Gibbs, and subsequent grantees claiming title through him to Nathaniel A. Haven, and proved Alexander Ladd to be the administrator, with the will annexed, of said Haven.

It was admitted, on trial, that the plaintiff cut the timber in question by permission of said Ladd and for his own use, except some portion which was excluded from the estimate of damages.   The court having intimated to the counsel an opinion, that the plaintiff, upon the testimony given, if believed by the jury, was entitled to recover, the defendant submitted to a verdict in favor of the plaintiff, with leave to except to all the foregoing decisions, and to move the supreme court for a new trial for any error therein ; for which purpose exceptions were allowed.

*L. B. Peck*, for defendant.

No title was conveyed by the collector's deed,

1. Because the committees advertisement was joint, embracing notices for three towns ;

2. Because it did not specify the roads on which the tax was to be expended;

3. Because it appears from the record of the committee's account, as allowed by the Chittenden county court, that but two of the committee acted in the matter.   By the act laying the tax, *all* were required to act ; a less number than

the whole could not legally act. *Townsend* v. *Gray*, 1 D. Chip. R. 127.

4. Because it does not appear from the record of the allowance of the account, that either of the committee were examined on oath, in relation to the labor done on the road, as required by the act of 1788. The court, in allowing the account, exercised an extraordinary power, and it should appear on the face of the record that that kind of evidence was given which the act required. *Thatcher* v. *Powell*, 6 Wheat. 119.

5. Because the items of the account were not produced. The record only shows the gross amount. This is not sufficient.

6. Because the collector's advertisement does not enumerate or in any way describe what lands were delinquent, or who were the owners or proprietors thereof. The act assessing the tax authorises the collector to sell so much of any delinquent owner's land as shall be sufficient to pay his tax and legal costs, after advertising the same, &c." Advertising what, is the inquiry? The answer must be, the delinquencies, and this could not be done without describing the lands on which the tax was unpaid. This is the rule adopted under the direct tax of 1815. *Eastman* v. *Little*, 5 N. H. R. 290. *Parker* v. *Rule's Lessee*, 9 Cranch. R. 64.

7. Because no rate bill or list of delinquent lands was furnished to the collector by the committee. The rate bill was made out and signed by Elmore, as collector. It should have been made up and signed by the committee.

*Wm. Upham and S. B. Prentiss*, for plaintiff.

The opinion of the court was delivered by

Redfield, J.—In this case the plaintiff claims title to the land from a source resting ultimately upon the validity of a collector's deed. No other objection is urged against his title, except what arises in regard to the proceeding in the collection of this tax. The tax was granted by the legislature at their session in 1792, and the committee and collector, in "collecting, accounting and disposing" of the same, are required, by the act granting the tax, to govern themselves according to "the act passed March 8, 1787, and the addition to said act, passed October 1788."

These statutes are extremely meagre in their directions. WASHINGTON, July, 1839. No record either of the committee's or collector's proceedings is required to be made, and, in many other important particulars, the requirements of the law are very different from the existing statutes upon the subject. These differences may be more intelligibly pointed out by noticing, in order, the several objections urged against the regularity of the sale.

Brown
v.
Hutchinson.

1. It is objected that the committees of three towns joined in one advertisement. But the committee of each town signed the advertisement separately, distinctly designating to which committee the land owners of each town should apply for liberty to work their taxes. In this tax, too, the act of the legislature granting the tax is a joint act, including the three towns. We do not perceive how the several committees, joining in one advertisement, could mislead any one. It seems, in some sense, more in accordance with the grant than separate advertisements would have been. It was well enough, at all events.

2. That the committee's advertisement did not specify the roads upon which the labor was required to be expended. This, in a town not organized nor allotted, as was the case in regard to Worcester, at that time, and when the committee would survey the roads as they proceeded, would be impossible. We do not perceive how, in any case, it could answer any good end. It would be enough for the land owners to learn that when they were put to work. This would be a part of the duty of the committee in superintending the work, and no more necessary to be advertised than the particular implements or tools which the laborers would be required to bring.

3. That the record of the allowance of the account of labor shows that but two of the committee acted. The objection is not well founded in fact. The record shows that two of the committee presented the account in court "for work expended under the direction of the committee," i. e. the whole committee. One might as well have presented the account as three.

4. That the record does not show that either of the committee were examined upon oath. The allowance of the account is a judgment of the court, and we could not presume

any court would render a judgment without competent evidence. The allowance, by implication, *ex vi termini*, imports an allowance in the manner pointed out in the statute. The presumption, *omnia rite acta*, applies with peculiar force in this case.

5. That the items of the account are not presented here. As the law then stood, the account was only required to remain "on file," whereas, it is now required to be "recorded." And now, by express statute, a certified copy of that record is made evidence, which might be questionable, at least, in regard to a paper merely required to be put "on file. The record of the allowance here presented was the only record required at the time and all that need now be proved.

6. That the collector's advertisements do not designate the particular *"delinquencies."* The statutes under which these advertisements were published, did not require the collector to advertise the "delinquencies," but only to advertise "the taxes at least three months before the sale." Under this statute there would not seem to be much plausibility in a decision requiring the particular delinquencies to be stated in the advertisement. But, under the present statute, where the collector is, in terms, required to " advertise such delinquencies," if the subject were not settled by the form given in the very statute, there would seem to be more propriety in requiring the particular delinquencies to be stated. That form was adopted in 1796, within one year after the date of the collector's advertisements in this case, and 'is the same form used by this collector. We may, then, safely infer that it was a form then in common use, which would be itself, in some sense, a practical contemporaneous construction of the statute, which, at this day, must, by every prudent man, be considered of great force. We think, therefore, that the form of the advertisements of the collector was correct.

7. That there was, in this case, no sufficient rate bill furnished by the committee to the collector. There was not, at the time, and is not at present, any statute, in terms, requiring a rate bill. It seems now, however, to be conceded, that, from the necessity of the case, some statement of the taxes unpaid to the committee is necessary to be furnished the collector as the basis of his proceedings. This may be fairly inferred as the sense of the legislature, in the statute of

1807, where the collector is required to give bonds to the committee, in double the amount of the tax, "he may be appointed to collect." This he is to do before entering upon his duty. The amount is to be determined by the committee, and, no doubt, should be presented in the form af a rate bill. Such is the view taken of this subject, by this court, in the case of *Spear* v. *Ditty*, 8 Vt. R. 419. But, at the time of collecting this tax, no statute existed requiring a formal tax bill, even by implication or intendment. That some statement of the unpaid portion of the tax, to be furnished by the committee to the collector, would, from the very nature of the collector's duty, be convenient or even necessary, is readily conceded. That the collector should have sought and required some such statement is very natural, and would seem almost indispensible to the discharge of his consequent duties; but to require that this should now be proved to have been in any particular form, or authenticated in any particular mode, when it is shown by the case that such a paper was furnished by the committee, would be a degree of nicety not justified either by any existing statute or by the reason of the case. If it be shown that a rate bill was furnished, which was received and acted upon, it is sufficient.

. In the present case, the proceedings of the collector are certified by him upon either the original or a copy of the rate bill, which certificate must be considered wholly unnecessary in order to authenticate either the rate bill or collector's own proceedings. No record was, at the time, required to be made of the collector's proceedings, and is not now of the rate bill.

It would not, then, seem to be important that either of these should be formally certified. If they were furnished by the proper authority, and contained the substance of what was required, it is sufficient. We think, therefore, that a certificate, which was unnecessary, should not be brought in to destroy what was well enough without it. Whether a rate bill, under the existing statute, is required to be more formal than the one under consideration is not now before the court. It is, however, apprehended that what is here said in regard to collector's sales can have no application to sales under the existing laws.

Judgment affirmed.