## Asa Jaquith & als. v. Greely Putney.

If, in the list of non-resident taxes, land is taxed in the name of an individual, it is to be presumed, till the contrary appears, that the name thus inserted is that of the owner or original proprietor.

Where rights of third persons have not intervened, the records of the county convention voting the county tax may, upon proper proof, be amended so as to show that the clerk of the convention took the oath of office, although there is nothing in the record as originally made indicating the probability that he did so.

Where rights of third persons have not intervened, a tax-collector's return that he put up the whole of a lot at auction, may be amended conformably to the truth, so as to show that he offered for sale only so much of the lot as was necessary to pay the tax and charges.

TRESPASS *qu. cl.* So far as the plaintiffs claimed to own the premises by purchase they claimed by purchases made prior to 1855. The defendant claimed title under a tax sale in March, 1856, to satisfy a non-resident tax assessed in 1855.

A portion of the original invoice and list of non-resident taxes for the year 1855, relating to the land in controversy, was as follows:

| Name. | Land. | Quantity. |
|---|---|---|
| James Boutwell. | Near Gove's Mill. | 100 acres. |

One of the plaintiffs' exceptions was, in part, that the land did not appear to have been taxed either to the owner or original proprietor.

Plaintiffs also excepted to defendant's tax title, because it did not appear by the records or any other evidence, that the clerk of the county convention voting the amount of the county tax was sworn. The records did show, in substance : June 14, 1854, members for the county met in convention ; chose Mason Hatch, chairman, *Joseph Copeland, clerk.* $5000 voted to be raised as a county tax, &c. There was no evidence that Copeland was sworn, and no evidence beyond the record itself that Copeland acted as clerk. After the trial Copeland's deposition was taken, (both sides appearing at the caption,) and furnished to the court at the law term. In this deposition Copeland testified : "I was chosen clerk, and I am of the impression I was qualified by taking the oath of office ;" and in answer to a subsequent question he said : "If I took the oath of office, and my impression is I did."

The tax collector testified, as the record shows, that he put up the whole lot of Boutwell at the auction sale in March, 1856. On being inquired of by the plaintiffs' counsel why he put up or sold the *whole* lot, he answered : "I put up as much as would be necessary to pay debt and costs, and I could get no bid for anything less than the whole amount of the Boutwell lot, and it was struck off to Martin Chase accordingly." Martin Chase was defendant's grantor. The question was reserved whether it was competent to explain the record by parol testimony when the record on its face is defective.

Other questions arose in the case which are not reported.

Verdict for defendant, which the plaintiffs moved to set aside.

*Burke & Wait,* for plaintiffs.

*Cushing* and *Bowers,* for defendant.

SMITH, J. I. It has already been decided that if, in the list of non-resident taxes, land is not taxed in the name of an individual, the *prima facie* presumption is that the name of the owner, or original proprietor, was unknown ; *Cardigan* v. *Page,* 6 N. H. 182 ; *Smith* v. *Messer,* 17 N. H. 420 ; and we think that if land is taxed in the name of an individual, it is to be presumed, till the contrary appears, that the name thus inserted in the list is that of the owner, or original proprietor ; see as to presumptions in favor of the validity of the acts of selectmen, *Gordon* v. *Norris,* 29 N. H. 198 ; *Blake* v. *Sturtevant,* 12 N. H. 567, p. 572 ; *Shackford* v. *Newington,* 46 N. H. 415, pp. 420–422 ; *Fletcher* v. *Drew,* Coos, July Term, 1868 ; also, *Perry* v. *Buss,* 15 N. H. 222, p. 224 ; *Proctor* v. *Andover,* 42 N. H. 348, pp. 357–9 ; *Smith* v. *Conway,* 17 N. H. 587, p. 592. In the present case the land was taxed in the name of James Boutwell, and, if the plaintiffs alleged that the taxation was not according to ch. 40, sec. 10, or ch. 46, sec. 1, Rev. Stats., the burden was upon them to show that Boutwell was neither the owner nor original proprietor. In the absence of exceptions to the charge of the court, it may be pre-

sumed that whatever evidence the plaintiffs offered on this point was submitted to the jury with proper instructions; and the verdict for the defendant negatives the ground of the plaintiffs' objection.

II.   We understand from the case that the records of the county convention were introduced to prove the grant of the county tax, and that these records purported to be signed by Joseph Copeland as clerk, but that it did not sppear by the record that Copeland was sworn as is required in ch. 23, sec. 2, Revised Statutes.   From the necessity of the case, it must be competent for the clerk of the county convention to make a record of his own election and qualification; see *Briggs* v. *Murdock*, 13 Pick. 305, p. 316; but the record in this case does not show Copeland to have been a clerk *de jure*, because it contains no statement that he took the oath of office.

It is said that it would have been sufficient for the purposes of the present case to have proved Copeland a clerk *de facto*, but this was not done at the trial.   There was no proof that Copeland ever acted as clerk upon any other occasion than that which is the subject of the controversy; see *State* v. *Wilson*, 7 N. H. 543; *Goulding* v. *Clark*, 34 N. H. 148; *Hall* v. *Manchester*, 39 N. H. 295; and there was no proof except his own certificate that he acted as clerk even upon that occasion.   The act itself cannot prove the authority to act.   To hold that it does, would be "begging the whole question."

It follows that the doings of the county convention were not legally proved at the trial.

But the evidence furnished to the court since the trial puts a different complexion on the matter.   As the plaintiffs did not, at the caption, object to the answers, *Lisbon* v. *Bath*, 23 N. H. 1, pp. 9, 10, nor cross-examine the witness as to the meaning attached by him to the word "impression," *Willis* v. *Quimby*, 31 N. H. 485, pp. 489, 490, they cannot now say that the witness did not testify to his recollection, but merely stated an opinion or inference; and upon the testimony we find as matter of fact that the clerk was duly sworn.

Can the record be amended so as to show that the clerk took the oath of office?   The plaintiffs do not occupy the position of subsequent purchasers or attaching creditors, and the case therefore differs from *Whittier* v. *Varney*, 10 N. H. 291, and *Gibson* v. *Bailey*, 9 N. H. 168; and the observations of *Parker, C. J.*, in *Whittier* v. *Varney*, p. 301, cited by plaintiffs, are expressly limited, on page 302, to cases where interests of third persons have intervened.   As the rights of third persons have not intervened here, the amendment, being shown to be conformable to the truth, may be allowed, although there is nothing in the record as originally made indicating the probability that the facts stated in the amendment took place.   See *Bean* v. *Thompson*, 19 N. H. 290; *Bishop* v. *Cone*, 3 N. H. 513; *Avery* v. *Bowman*, 39 N. H. 393; *Parker, C. J.*, in *Whittier* v. *Varney*, 10 N. H. 291, pp. 298, 299.

The plaintiffs have cited the following extract from the opinion of *Richardson, C. J.*, in *Cardigan* v. *Page*, 6 N. H. 182, p. 190:

" When lands are sold for taxes, the former owner ought to be able to learn from the records of the proceedings whether his title has been lost. He ought not to be put to the expense of a lawsuit to learn whether his land has been legally sold." But an examination of that case renders it most probable that this language was used to enforce the idea that the record was the only proper evidence of certain official acts, and that it was not meant that the record could not be amended. On the very same page, *Richardson, C. J.*, said : "In most cases, an imperfect return can be amended, and if the facts will warrant it, a good return be made." If, however, the language of the court in *Cardigan* v. *Page* should receive the construction that the plaintiffs contend for, it must be regarded as overruled by the subsequent decision in *Bean* v. *Thompson*, 19 N. H. 290. In *Cardigan* v. *Page*, *Richardson, C. J.*, was speaking of an imperfect return on a town meeting warrant. In *Bean* v. *Thompson*, there was originally no return on the warrant, but the selectmen were permitted during the trial to make a return, and the town clerk to amend the record accordingly, against the objection of a purchaser. In *Bishop* v. *Cone*, 3 N. H. 513, in which the opinion was delivered by *Richardson, C. J.*, an amendment was allowed, which did not, as in the present instance, merely supply an omission, but corrected a positive mis-statement in the record as originally made.

If the court considered a tax-title claim as unmeritorious, it would not follow that we should deny to the claimant the same privileges in relation to making amendments that are ordinarily allowed in other cases ; see *Parker, C. J.*, in *Williams* v. *Little*, 11 N. H. p. 576 ; *N. H. Savings Bank* v. *Webster*, Merrimack, June Term, 1868.

But it may perhaps be found upon examination that the right of the land-owner to insist that his property shall not be taken from him without a compliance with all statute provisions is of no higher nature than his obligation to contribute to the support of those governmental institutions without which there would be no property and no law.

III. It would seem that the record shows that the collector put up the whole lot for sale. This would constitute a defect in the tax title ; *Ainsworth* v. *Dean*, 21 N. H. 400 ; *Lyford* v. *Dunn*, 32 N. H. 81, pp. 86–7 ; *Davis* v. *Handy*, 37 N. H. 65, p. 69 ; and the record could not be contradicted or explained by parol evidence. But the testimony seems to show that in fact the collector offered for sale only so much of the lot as was necessary to pay the tax and charges, and a majority of the court are of opinion that the record may be amended so as to conform to the truth in this respect. The decision in *Bishop* v. *Cone*, before cited, tends to sustain this ruling.

The amendments in this case are of such a nature that they may be made after verdict. *Whittier* v. *Varney*, 10 N. H. 291. When they have been made, there should be

*Judgment on the verdict.*