Aug. 13, 1876. }                    CAHOON *v.* COE.

The power to sell land for the non-payment of taxes is a naked power, not coupled with an interest; and in all such cases every prerequisite to the exercise of the power must precede its exercise.

In interpreting statutes authorizing the sale of land for the non-payment of taxes, the title to be acquired must be regarded as *stricti juris*.

Whoever sets up a tax title must show that all the requirements of the law have been complied with, unless the former owner is the purchaser.

In all judicial or *quasi* judicial proceedings, affecting the rights of the citizen, it is a fundamental rule that he shall have notice, and an opportunity to be heard, before the rendition of any judgment, order, or decree against him.

The question as to what is a public place, within the meaning of the statute, relating to the sale of land for the non-payment of taxes, is a mixed question of law and fact; but when the facts are not in dispute, it is a question of law.

A sale of land for taxes, in a place where there are six inhabited dwelling-houses, is void, unless notice is posted in the place where the lands to be sold are situated.

In a writ of entry, where the title to the lands sued for is in the wife, the husband need not be joined.

In such case, when the husband has been joined, the court may allow the party to amend by striking out the name of the husband.

The record of a sale of land for the non-payment of taxes may be amended by the sheriff who made the sale, upon a proper case made, though the clerk who made the record be dead.

FROM COÖS SUPREME JUDICIAL COURT.

WRIT OF ENTRY, to recover the grant of land called Wentworth's Location. Plea, *nul disseizen*. The cause was tried at Feb. trial term, 1874. To show title in the plaintiffs, their counsel read as evidence,—

1. Deed, Charles Bellows to Mary L. Cahoon, dated January 1, 1870, conveying said Location.

2. Deed, John Bellows to Charles Bellows, dated December 27, 1852, conveying said Location.

3. Deed, Charles Bellows, sheriff of Coös county, to John Bellows, dated February 1, 1851, conveying said Location, upon a sale thereof for taxes made January 29, 1850.

4. "An act to raise sixty thousand dollars for the use of the state," approved July 3, 1847. See Pamphlet Laws of that year, chapter 524.

5. The apportionment act of 1844. See Pamphlet Laws of that year, chapter 129, showing the proportion of Wentworth's Location for the assessment of public taxes to be five cents for each thousand dollars raised.

6. An advertisement for the sale of said Location for taxes, published in the *N. H. Patriot and State Gazette*, printed at Concord, N. H., in the numbers issued October 18th, October 25th, and November 1st, 1849.

7. The same advertisement, published in the *Coös County Democrat*, printed at Lancaster, N. H., in the numbers issued November 7th, November 14th, and November 21st, 1849.

8. Copy of the account of sale of said Location, duly certified by James M. Rix, clerk of the court of common pleas for the county of Coös. Said Rix's certificate is dated August 16, 1853, and certifies that the copy "is a true copy of the original record of sale on file in my office, among the records of said court," and bears the seal of the court of common pleas.

9. List of redemption from said sale, duly filed February 1, 1851, from which it appears that said Location was not redeemed.

It was conceded that no notice of the sale was posted in Wentworth's Location. The plaintiffs introduced testimony tending to show that there was no public place in said Location, either before or during the eight weeks preceding January 29th, 1850, the day when it was sold for taxes; that for two or three years prior to and up to the time of said sale there had been six families residing in the easterly part of the Location, in small, ordinary dwelling-houses, some made of logs and some of them framed, two or three upon the easterly side of the Magalloway river, and the rest upon the westerly side; that each of

said settlers occupied a small farm or clearing where his dwelling-house was located; that there was no church, meeting-house, school-house, hotel, office, mechanic shop, store, sign-post, guide-post or board, box by the wayside for depositing newspapers for subscribers or others, no public highway or bridge, nor any other place except dwelling-houses, at which a notice of said sale might have been posted; that no person had ever known a notice or advertisement of any kind to have been posted in the Location before the date of said sale;—and then rested their case.

The defendant's counsel moved for a nonsuit, and made the following objections to the plaintiffs' title:

1. That the deed from Charles Bellows to Mary L. Cahoon does not sustain the joint seizin of the plaintiffs, as alleged in the writ. Leave was granted the plaintiffs to amend their writ upon this point if found necessary, and the defendant excepted.

2. That the deed of Charles Bellows, as sheriff, does not follow the form prescribed by Rev. Stats., ch. 46, p. 114.

3. To the copy of the account of the sale read in evidence by the plaintiffs, the defendant objected that said sale was advertised to be held at the Coös hotel, in Lancaster, on the 29th of January, 1850, at ten o'clock A. M. ; and that after the sale of Low & Burbank's Grant, and before the sale of said Wentworth's Location, said sale was adjourned,—the entry of which adjournment is in the following form: viz., " Said sale was opened by the sheriff aforesaid at ten o'clock in the forenoon, this 29th day of January, A. D. 1850, agreeably to advertisement, and after the sale of the grant or tract of land known as Low and Burbank's Grant, said vendue was adjourned to two o'clock this afternoon. Attest, John W. Lovejoy, clerk." Then follows the account of the sale of Wentworth's Location, beginning as follows: "January 29, 1850, also at the vendue aforesaid, reopened at two o'clock P. M., agreeable to adjournment," &c.

To this it was objected by the defendant,—(a) that it did not appear that said sale was adjourned by proclamation; (b) that it did not appear at what hour the sale was adjourned, nor to what place; (c) that it did not appear at what place the sale was reopened; (d) that ten o'clock "A. M." is not a sufficient indication of the time of day; (e) that said sale closed at three o'clock in the afternoon instead of six: it appeared, however, that all the lands advertised for sale had been sold before the sale closed at three o'clock; (f) that the law does not authorize the collector to adjourn a sale from hour to hour, but only from day to day; (g) that the account of the sale was returned to the clerk of the superior court instead of the clerk of the court of common pleas. The following filing appeared on said account of sale: " Coös ss., S. C. clerk's office. Received and filed February 2, 1850. Attest, James M. Rix, clerk." (h) That the affidavit of Charles Bellows, to prove the posting of the notice at the Coös hotel, did not sufficiently show that the advertisement remained posted to the time of the sale.

The plaintiffs introduced in evidence from the clerk's office in Coös

county the original account of said sale, and the original advertisement posted at the Coös hotel.  Subject to exception, Charles Bellows testified as follows: " I posted this advertisement at the Coös hotel, in Lancaster, on the 16th day of November, 1849.  On the day of sale I found it where I posted it, and took it down.  Joseph C. Cady kept the Coös hotel at that time.  I delivered the original account of sale, the advertisement posted at the Coös hotel, the three New Hampshire *Patriots* and the three *Coös County Democrats* containing the advertisement of the sale, to James M. Rix, then clerk of Coös court of common pleas, on the 2d day of February, 1850.

The plaintiffs asked leave to amend the original account of sale, in regard to the adjournment, &c., which was granted *pro forma*, if the whole court should be of the opinion that the amendment is necessary, and that the record can be so amended.  The defendant excepted.  It was stated in court, and not denied, that John W. Lovejoy, clerk of the sale, is dead.

4. The act raising the tax was approved July 3, 1847, and the treasurer's warrant was issued to the sheriff of Coös county in April, 1849. It was objected that the treasurer of the state did not seasonably assess the tax, and that the warrant was not seasonably issued.

The court denied the motion for a nonsuit, and overruled all the foregoing objections taken by the defendant's counsel, and the defendant excepted.

The defendant then introduced evidence of a grant of Wentworth's Location from the state to George Wentworth in 1796, and from him in direct line or title of one third in common of said Location in the defendant, to which title the plaintiffs made no objection, only to interpose the title under said tax sale.

Upon the question as to whether there was a public place in the Location where a notice of the sale might have been posted, considerable evidence was introduced on both sides, and various objections were taken to its admissibility, which, in the view taken by the court, are not necessary to be stated.

The defendant requested the court to instruct the jury,—(1) that inasmuch as it appears that there was a settlement in Wentworth's Location, consisting of several families of inhabitants residing in said Location in October, November, and December, 1849, and January, 1850, it was necessary that the sheriff of the county of Coös should have posted a notice of this sale in question at some place in said Location; (2) that on the evidence of the plaintiffs, it appears that in 1849 there were several places in Wentworth's Location so public that an advertisement, if posted at any one of them, would have been seen by many persons, and especially by the residents of the place;—the defendant therefore requests the court to order a verdict for the defendant.  These requests were denied, and the defendant excepted.

The court charged the jury on this trial substantially as the court did on the former trial, as appears in the report of this case in 52 N. H. 522, 523 ; to which the defendant excepted.

Mary L. Cahoon is the daughter of Charles Bellows. His deed, dated January 1, 1870, to her, was a gift to her. She paid nothing as the consideration for the same. Said deed is made a part of the case.

This action is a review of the action reported in 52 N. H. 518. The defendant, February 5, 1873, filed in the office of the clerk of the court the notice required by sec. 3 of ch. 215 of the Gen. Stats. The order required by said section was issued by the clerk shortly after the adjournment of the February term, 1873 (which adjourned February 15, 1873), and was duly served.

A writ of review of the original action was also issued by the clerk, February 27, 1873, returnable at the August term, 1873, which was duly served.

The jury having returned a verdict for the plaintiffs, the defendant moved to set it aside, and for a new trial, and the questions arising on this motion were reserved by SMITH, J.

*Ray* and *Geo. A. Bingham*, for the plaintiffs.

I. The amendment allowing George W. Cahoon's name to be stricken out of the suit at the trial, upon review, was properly granted. Laws of N. H., June, 1872, ch. 39, sec. 1, p. 37.

The object of this statute was, to remedy just such a technical objection as the defendant's counsel have made in this cause.

The case of *Kent* v. *Gray* has no application here. In that case, the second section of the act in question was held unconstitutional, because it applied to pending causes.

This cause was not pending in any sense whatever at the time of the passage of that act, nor is the original action pending now, in any legal sense. As appears by the writ of review, final judgment was rendered in the original action at Colebrook, February term, 1873, and the review has been taken and prosecuted since then.

Under sec. 3, ch. 215, Gen. Stats., a review is not begun until the clerk issues either (1) the order to the adverse party, or (2) a writ of review.

Upon a review, there is no reversal of the judgment rendered in the original action. The meaning of sec. 9, ch. 215, Gen. Stats., which enacts that the action shall be brought forward on the docket of the court at the next term after the order or writ of review is served, and that the same shall be tried as if no judgment had been rendered therein, is only that the first judgment shall have no weight on the second trial, and shall not be evidence of the facts of the case for or against either party. *Badger* v. *Gilmore*, 37 N. H. 457 ; *Bell* v. *Bartlett*, 7 N. H. 178 ; *Knox* v. *Knox*, 12 N. H. 357 ; *Otis* v. *Currier*, 18 N. H. 85 ; *Plumer* v. *Fogg*, 18 N. H. 559 ; *Messer* v. *Swan*, 4 N. H. 481 ; *Johnson* v. *Railroad*, 43 N. H. 410 ; *Pike* v. *Pike*, 24 N. H. 397 ; *Haynes* v. *Ordway*, 52 N. H. 284 ; *Andrews* v. *Foster*, 42 N. H. 376 ; *Shephard* v. *Hatch*, Cheshire county, December, 1873 ; *Ordway* v.

*Haynes*, Merrimack county, June, 1874; *Swett* v. *Sullivan*, 7 Mass. 342. The legislature having given the court power to allow a plaintiff's name to be stricken out of a writ, by the act of 1872, an amendment of that character falls within the discretion of the court, under sec. 10, ch. 215, Gen. Stats., just as much as any other amendment; and in every proper case it ought to be allowed.

II. The amendments of the original account of the sale of Wentworth's Location, made by Charles Bellows, sheriff of Coös county, January 29, 1850, for taxes, were properly allowed by Judge SMITH at the trial.

1. There was no dispute about the facts. The defendant did not and does not claim but that the amendments were all in strict accordance with the proceedings at the sale. The proof was full and conclusive. If the court should be of opinion that the account of the sale, as originally returned to the clerk of the court by the sheriff, is insufficient, and that amendments are therefore necessary, the only question then is,.Can the amendments be made by the sheriff after the clerk of the sale is dead ? A clerk, at a land sale for taxes, is a person unknown to our statutes. Such a person is not essential to the making of a valid sale of land for taxes. *Cardigan* v. *Page*, 6 N. H. 182, 193. The execution of the power to sell land for taxes, by virtue of a tax-list and warrant, is vested in the sheriff alone, and every essential act must be done by him. Consequently, an amendment may always be made when necessary, without the clerk's agency, because, the sale being made by the sheriff alone, the amendment must be made by the same officer. .It is believed that no case can be found holding any other doctrine, where a clerk is not a statutory officer. We are not aware of any such case in New Hampshire.

2. The record of the account of sale in this case contains enough to lead to the belief that everything necessary to be done was in fact done, and that a correct record might have been made at the time.

And it is well settled that a purchaser of the land, after the sale or levy, takes the title from the former owner, subject to a right to have the record put in form, according to the truth of the case. *Gibson* v. *Bailey*, 9 N. H. 168, 176; *Pierce* v. *Richardson*, 37 N. H. 306; *Low* v. *Pettingill*, 12 N. H. 337; *Cass* v. *Bellows*, 31 N. H. 501; *Bean* v. *Thompson*, 19 N. H. 290; *Derry Bank* v. *Webster*, 44 N. H. 265; *Smith* v. *Knight*, 20 N. H. 9, 17; *Taylor* v. *Emery*, 16 N. H. 359; *Whittier* v. *Varney*, 10 N. H. 291.

3. These amendments were made by leave of the presiding judge at the trial. No question of discretion is reserved, and the only exception open to the defendant is the one relating to the power of the court to grant them, the clerk of the sale being dead. *Avery* v. *Bowman*, 39 N. H. 393.

4. The sheriff who made this sale has no legal interest in the case. If he had, there would be no valid objection to the allowance of an amendment, according to the facts of the case. The objection, which is suggested in some of the old cases cited by the other side, against

allowing an officer to amend his proceedings in a case where he was interested, was when witnesses were not competent to testify in any cause or matter wherein they had the slightest interest. Such an objection has no force at the present day, except in so far as the interest which a person is shown to have in the subject-matter of the litigation may affect his credit. We think the other side ought to be satisfied with the finding of the jury in regard to the point whether or not Charles Bellows had any interest in this land before John Bellows conveyed it to him, December 27, 1852, for $1,500 was proved on the trial to have been actually paid to John Bellows for it. We also think it will be difficult for the learned gentlemen to point out what legal interest Charles Bellows has had in Wentworth's Location since January 1, 1870, the date when he conveyed it to Mrs. Cahoon. The defendant's brief upon this point sounds remarkably like their argument before the jury upon the question of fraud in the sale.

5. It is untrue that the defendant, and those under whom he claims, have always been in possession ever since the date of this tax sale. It appeared on trial that David S. Greenough abandoned Wentworth's Location altogether, years before Coe and Pingree had anything to do with it; and that when they bought up his title,—shortly after Charles Bellows paid $1,500 for it,—the latter was in possession, and quieted the settlers by conveying to them the places where they had squatted, and upon which they had erected their log cabins and had made their little clearings.

III. The account of sale was delivered by the sheriff to the clerk of the court of common pleas. Rev. Stats., ch. 46, sec. 9. Mr. Rix was clerk of both courts at that time. Such delivery may be shown by parol. The filing is immaterial. No filing or recording was required by law to be done by the clerk of the court. Rev. Stats., ch. 47, sec. 6. The papers relating to this sale were in the proper place of deposit on August 16, 1853, as appears by Mr. Rix's certificate, under the seal of the court of common pleas, appended to the copy of the account of sale used by us at the trial.

IV. The objection, that Charles Bellows's affidavit does not sufficiently show that the advertisement remained posted until the sale, is not well taken. The affidavit shows that he posted it November 16, 1849, and that, in his belief, it remained posted during the interval between that time and the sale, which is all the law required. Rev. Stats., ch. 46, sec. 9. Mr. Bellows's testimony on this point was competent, and establishes beyond dispute that the advertisement remained posted the proper length of time. Such would also be the presumption of law.

V. The defendant's requests, upon the lack of a notice of the sale being posted in Wentworth's Location, were properly denied. The question is *res adjudicata* in New Hampshire. It is an elementary principle, that precedents and rules of law established by the courts shall be adhered to and followed, unless flatly absurd or unjust. *Bellows* v. *Elliot*, 12 Vt. 569.

We rely upon the opinion of the court in this cause, as delivered by Judge Doe, 52 N. H. 525, 526, wherein he says,—" At all events the ruling of the court at the trial cannot be complained of by the defendant." *Stacy* v. *Vermont Central R. R.*, 32 Vt. 552; *Bellows* v. *Parsons*, 13 N. H. 256.

The plaintiffs say,—

1. That the law, upon a full consideration of sec. 7, ch. 46, and of sec. 5, ch. 47, of the Rev. Stats., has been held to be, that if there is no public place in a town or unincorporated place, then it is not necessary to post a notice therein.

2. That what is a public place is a mixed question of law and fact. The nature and situation of the place, and the uses to which it is applied, are matters of fact to be settled by the jury; but when these are not in dispute, it may be a question of law.

3. That, as applicable to a given case, it is held that taxes are collectable upon an unincorporated and uninhabited place, and that no notice need be posted therein, as there can be no public place therein, as a matter of law.

4. That when there are inhabitants in unincorporated places, as in the case at bar, the nature, situation, and uses of their several dwelling-houses, and whether any or all of them are public places or not, under proper instructions from the court are questions of fact for the jury to determine.

5. The questions of fact arising in this case have been submitted to the jury, under proper instructions from the court; and the jury have found that there was not a public place in Wentworth's Location during the eight weeks prior to this sale. In support of these several propositions, see, also, *Tidd* v. *Smith*, 3 N. H. 178, *Wells* v. *Burbank*, 17 N. H. 393, *Russell* v. *Dyer*, 40 N. H. 173, *Scammon* v. *Scammon*, 28 N. H. 428, *Gibson* v. *Bailey*, 9 N. H. 175, *Wells* v. *Company*, 47 N. H. 255, *Russell* v. *Dyer*, 43 N. H. 396.

6. The request made by the plaintiffs' counsel, that an ordinary private dwelling-house, used for the purposes for which such dwelling-houses are commonly used, is not a public place, is altogether more in accordance with the true idea of the statute and the common-sense of the thing than the doctrine contended for by the defendant, or that adopted by the court at the trials.

After this point has been settled so many times by the highest judicial tribunal of the state, to us it appears a little remarkable that the court will again hear the subject seriously discussed.

*Wm. & H. Heywood*, for the defendant.

1. The declaration alleges the plaintiffs' seizin to be in right of the wife, and the case shows that she was sole seized of the premises. The objection that there was a misjoinder ought therefore to have prevailed. Gen. Stats., ch. 164, sec. 1813; *Whitcher* v. *Benton*, 48 N. H. 157; *Cooper* v. *Alger*, 51 N. H. 172.

2. The writ cannot be amended by striking out the name of the husband. *Kent* v. *Gray*, 53 N. H. 576.

3. The motion for a nonsuit should have been sustained, because it appears from the case that the evidence did not show a joint seizin, as alleged in the writ. *Hart* v. *Chesley*, 18 N. H. 379; *Smith* v. *Wheeler*, 29 N. H. 342; *Stickney* v. *Stickney*, 21 N. H. 61; *Bailey* v. *Kimball*, 26 N. H. 351.

4. The proceedings to make a valid sale must be in substance as required by the statute, and if they are not, the sale is void. *Cardigan* v. *Page*, 6 N. H. 182; *Bean* v. *Thompson*, 19 N. H. 290; *Ainsworth* v. *Dean*, 21 N. H. 400.

It appears that the sale was adjourned from one hour to another, and it does not appear by the return that the adjournment was made by proclamation, as the statute requires.

5. The sheriff caused his return to be filed in the office of the supreme court, when it should have been filed in the office of the clerk of the court of common pleas.

6. The evidence that the notice was posted at the place of sale did not show that it remained posted till the day of sale. *Nelson* v. *Pierce*, 6 N. H. 193.

7. If amendments are to be allowed, they should be made by the clerk of the sale, and no one else can do it. *Gibson* v. *Bailey*, 9 N. H. 176; *Low* v. *Pettingill* 12 N. H. 340; *Pierce* v. *Richardson*, 37 N. H. 310, 311. And amendments will not be allowed when the rights of other parties have intervened. *Orvis* v. *Isle La Motte*, 12 Vt. 195; *Judevine* v. *Jackson*, 18 Vt. 470.

8. The treasurer did not seasonably assess the tax and issue his warrant, as is provided by the law raising the tax, which act was passed July 3, 1847. The warrant was not issued till April, 1849, and the law requires that it should have been collected and paid to the treasurer on or before December 1, 1848. This delay caused the mistake by reason of which the owner did not pay the tax.

We claim that the request of the defendant for instructions, in regard to posting a notice on the Location, should have been granted. It is said, in the report of this case in Vol. 52, that very strong reasons might be given for the construction of the statute contended for by the defendant upon this point. But it is said that the question is not an open one. The court, however, at the term when they allowed us again to insist upon this point, treated it as an open question, and we trust that we may be pardoned if we so argue it. And we contend that the fair rule to be deduced from the decisions is, that " a public place " is a relative term, depending upon the circumstances of the case; and that in a case like ours, where there was no such place as those enumerated in the decisions as public places from their very nature,—such as hotels, stores, the post-office, &c.,—then a dwelling-house may be a public place, and the house should be selected that is most open to public observation, and best situated to post the notice so as to give public information of the sale.

In *Tidd* v. *Smith* it was decided that a shoemaker's shop was not a public place in the town of Deerfield. C. J. BELL, in *Russell* v. *Dyer*, 40 N. H. 187, says that the question there arose in the town of Deerfield, one of the oldest incorporated towns, having as early as 1800 a population of nearly 2,000, and having in 1823, two years after the decision, two meeting-houses, eight taverns, six stores, and two post-offices. And that opinion shows that a store, a house of public worship, &c., may or may not be a public place, and that the post-office, railroad depot, &c., may be, because the place is one of most common resort; and that in thinly settled places, where there are no places usually termed public, other places may be regarded as public places, according to their situation as a place of resort. And if it is shown that there are several places in a township, each of which is more or less visited by the public, and at each of which a notice posted would be seen more or less, it is not logical, as we contend, to say that no notice at all need be posted. And in this case the effort of the plaintiffs was, to show that all of the houses on the Location were equally public; and if they did succeed in this, the only consequence would be that it would have been well enough if the sheriff had posted the notice at any one of the several houses.

The question, in the case of *Russell* v. *Dyer*, 40 N. H. 173, arose upon the validity of a sale of the equity of redemption of Crawford's Purchase, where no one lived, and of Nash & Sawyer's Location, where there was but one public place, and no other dwelling-house, and it was decided that under such circumstances the equity of redemption could not be sold. But taxes must be collected : the public good requires it ;—and if an uninhabited place is taxed, there is a way to collect the tax, as decided in *Wells* v. *Burbank*, 17 N. H. 393.

If the doctrine decided in *Russell* v. *Dyer*, 40 N. H. 173 and 43 N. H. 396, should be carried out, there can be no sale of a place where there are no inhabitants. And in the opinion of SARGENT, J., it would seem that he was very much inclined to question the decision in *Wells* v. *Burbank*. But we have very little doubt that it will be held that a tax in such a place can be collected. But when the place has inhabitants, or where a public road passes through it, there must be some place where a notice if posted would be seen by many persons, and the knowledge of it would be circulated. Judge SARGENT, in his opinion in the report of the case last cited, says (p. 398),—" It is hardly possible to conceive an inhabited place which would not have more than one public place. This goes upon the ground clearly held in both of the reports of the case of *Russell* v. *Dyer*, that " a public place " is a " relative term, applying to different objects and situations, according to the condition and character of the town or place which formed the point of inquiry." And in the opinion in the last case it is clearly said, that every place having inhabitants has a public place. It must and will have some place where, if an advertisement were posted, it would be seen by the public. In *Wells* v. *Burbank*, the posting of a notice would have been wholly useless, because Success was a

wilderness, and it was decided that it could be dispensed with. But in this case, to have posted an advertisement at either of the houses in the place could not have been considered an idle act. It would have given notice to somebody, and that is the purpose of posting a notice. We contend that it has never been settled that a sale for taxes under our statutes can be made of land in an inhabited place, unless the advertisement is posted there. And in all cases, so far as we can find, the practice has been, where the place was inhabited, to post an advertisement there, though there were no tavern, store, mechanic's shop, &c., there. In *Cambridge* v. *Chandler*, 6 N. H. 271, the advertisement was posted on a board set up by the Androscoggin river, where persons who passed up and down the river could see it, the town of Cambridge not being then inhabited. In the case of *Homer* v. *Cilley*, 14 N. H. 87, it appeared that the place Davis's Gore was inhabited, and that the houses were all alike, and the advertisement was posted at a private dwelling-house. In the case of *Wells* v. *Burbank*, 17 N. H. 393, the advertisement was posted on a pine tree near a dam—as public a place as any in the township. These cases show how it was understood up to the time of the sale in the last mentioned case, which was January 4, 1842.

We contend, therefore, that the court were mistaken in saying that this question is not an open one in a case like this. The decisions, in *Wells* v. *Burbank* and *Wells* v. *The Company*, have settled the question as to a place where there are no inhabitants; but as to a place where there are inhabitants, we submit that it never was settled. And no titles will be unsettled by a construction of the law such as we contend for; but, on the contrary, that opinion is based upon a construction of the statute as to tax sales, much at variance with the current of former decisions, the substance of which is well expressed in the above quotation from Judge SARGENT's opinion in *Russell* v. *Dyer*. We contend that no one was ever warranted, from anything ever decided in New Hampshire, in relying upon a tax sale of an inhabited place, if no advertisement of the sale was posted in the place.

It appears in this case that the Greenoughs had an agent in the vicinity, and there is but little doubt that, if a notice had been posted in the Location, the agent or the owners would have been informed of it: and in that case this tax title never would have existed.

*Ray* and *Bingham*, for the plaintiffs, in reply.

I. We admit that the rule in this state has been, that the court would not allow the name of one of two or more demandants to be stricken out of a writ of entry by way of amendment. *Pickett* v. *King*, 4 N. H. 212. But the practice has always been the other way in Massachusetts— *Colcord* v. *Swan & Wife*, 7 Mass. 291, *Rehoboth* v. *Hunt*, 1 Pick. 224; and we think no substantial reason can be given why the law ought not to have been held the same in New Hampshire as in Massachusetts.

The rule has always been, in both states, that the name of one of two defendants, in an action for a tort, or sounding in tort, might be stricken out of the writ, by way of amendment, at any time before ordering the trial.

This is an action sounding in tort. Why may not a plaintiff's name be stricken out, as well as that of a defendant? Waiving the precedents, we think it would puzzle the profoundest jurist to give a reason for the rule in the one case, which will not hold equally good in the other. It was with this view of the matter, undoubtedly, that the legislature passed the act of July 3, 1872. Pamph. Laws, ch. 39, sec. 1, p. 37. The right to amend by striking out a plaintiff's name now falls within the scope of the court's discretion, just as much as any other amendment under Gen. Stats., ch. 215, sec. 10.

If our action cannot be maintained in the name of George W. Cahoon and wife, under sec. 13 of ch. 164 of the Gen. Stats., then the amendment allowed by Judge SMITH becomes material and important. This is an action of review, brought under sec. 3, ch. 215, of the Gen. Stats. The original judgment, which it seeks to reverse or modify, was rendered at Colebrook, February term, 1873 ;—see the allegations of the writ of review served upon the plaintiffs, a copy of which we send to the court with this brief.

Neither party had any right to review until a judgment was rendered—such a judgment as put an end to the original action. Gen. Stats., ch. 215, sec. 1. While our original action was pending, before any judgment had been rendered therein and before any right of review had accrued, the legislature passed the act of July 3, 1872. Instead of enacting this law, the general court might have taken away the right of review altogether, and then this defendant would have been absolutely concluded by the judgment which the court rendered at the February term, 1873, without ever having the opportunity (once waived) of making this motion for a nonsuit.

If the legislature has the power to repeal the right of review altogether, in regard to which we think there can be no question, has it not also the power to say that a defendant may review his cause, subject to the right of the plaintiffs to amend their writ by striking out one of their names? Does not the power to destroy a right or remedy, include the authority to limit or regulate it? The greater must include the less. *Rich* v. *Flanders*, 39 N. H. 304; *Willard* v. *Harvey*, 24 N. H. 352–354, and cases there cited; *Cummings* v. *White Mts. Railroad*, 43 N. H. 114; *Read* v. *Bank*, 23 Me. 318; *Bank* v. *Freeze*, 18 Me. 109; *Thayer* v. *Seavey*, 11 Me. 284.

From the moment when that judgment in favor of the plaintiffs was rendered, to the moment when the clerk issued the order or writ of review required by Gen. Stats., ch. 216, sec. 3 (both were issued in this case shortly after the February term, 1873), it was a final and conclusive judgment between the parties, and during that period as complete a bar to further litigation as a judgment could possibly be in any action where no review is ever begun. During that time, it could have

been pleaded in bar, in a proper case, just as successfully as any judgment could within a year after its rendition, where no review is ever commenced.

No right of review had accrued to the defendant when the act of July 3, 1872, took effect. No review can be said to be pending, either legally or in fact, until the writ or order required by the statute is issued by the clerk. No right to review a case exists, or is vested in a party, until it is begun. Hence it follows, that whenever a party possessing such right reviews a cause, his action of review, throughout its progress, is subject to and must be controlled by the laws which were in force at the time it was begun. The right to review this cause came to the defendant long after the passage of the act of July 3, 1872, and it came to him subject to a right vested in the plaintiffs, under the act aforesaid, to amend the writ by dropping the name of one of them. There was a time—a given period—after judgment and before the commencement of the review, that the action was not and could not be pending. It ceased to be an open, undetermined matter between the parties, and remained so until the plaintiff instituted his action of review. When the defendant did that, he took the new proceeding as it then existed by law, and not as the law existed when the original suit was begun.

If the constitutional objection to section 2 of the act of July 3, 1872, would apply against the original action, it would not apply against the action of review, because the latter was not pending at the time of its passage, in any sense whatever. *Badger* v. *Gilmore*, 37 N. H. 457; *Plumer* v. *Fogg*, 18 N. H. 559; *Zollar* v. *Janvrin*, 49 N. H. 117. Note the phrase almost uniformly used by our judges when speaking of a case pending in review. They speak of it as " an action of review." But we insist that the second section of the act of July 3, 1872, was constitutional when applied to our original action, even if the same were pending now; and the reasoning of Doe, J., in *Kent* v. *Gray* (Coös county, not yet reported), sustains us in this position, on the grounds suggested in our oral argument at December term, 1874.

*Stanley, J., C. C. This case, though coming before us on a motion to set aside the verdict of the jury, on the trial on review, is really to be considered and decided as if the original case, reported in 52 N. H. 518, were before us on a motion for a rehearing; and in the examination of the questions raised I have considered them in that light. In the view I have taken, I have only deemed it necessary to consider the questions raised by the refusal of the court to give the instructions requested by the defendant, and by the instructions actually given, to which exceptions were taken.

The case finds that no notice of the sale of the land in question was posted in the Location; that for two or three years prior and up to

---

*Ladd, J., having been of counsel, and Smith, J., having reserved the case, did not sit.

the time of the sale there had been six families residing in the easterly part of the Location, in small, ordinary dwelling-houses; that each of said settlers occupied a small farm or clearing where his dwelling-house was located; and that there was no place except dwelling-houses at which a notice of sale might have been posted.

The defendant requested the court to instruct the jury that inasmuch as it appears that there was a settlement in Wentworth's Location, consisting of several families of inhabitants residing in the Location in October, November, and December, 1849, and January, 1850, it was necessary that the sheriff of the county of Coös should have posted a notice of the sale in question in some public place in the Location. The defendant also claimed that on the evidence of the plaintiffs it appeared that in 1849 there were several places in Wentworth's Location so public that an advertisement, if posted in any one of them, would have been seen by many persons, and especially by the residents of the place; he therefore requested the court to order a verdict for the defendants. Both of these requests should have been granted.

The plaintiffs claim under a tax-title derived from Charles Bellows, father of the female plaintiff, who was the sheriff of the county of Coös, and acting collector of taxes in Wentworth's Location. The sale was made in January, 1850. The statute then in force required the collector to " post an advertisement or notice of the sale in some public place in the town or place where the lands to be sold were situated, for eight weeks before the sale." Comp. Stats. 128, 131.

This, the case finds, was not done. It is well settled, by repeated decisions of all the courts of this country, that the power of a collector to sell lands for the non-payment of taxes is a naked power, not coupled with an interest; and in all such cases the law requires that every prerequisite to the exercise of the power must precede its exercise;— that the agent must pursue the power, or his act will not be sustained. *Parker* v. *Rules, Lessee,* 4 Wheat. 77; *Lyon* v. *Hunt,* 11 Ala. 295, 312; 2 Ohio 378; 4 Dev. 38; 1 Scam. 335; 10 Sm. & Marsh. 246, 251, 264; 2 Ham. (Ohio) 231; 6 Wheat. 119; 2 Yeates 100; 13 Serg. & Rawle 208; 7 Cowen 88; 13 Peters 32; 5 Ham. 458; 8 Wheat. 681, 688.

In *Spear* v. *Ditty,* 8 Vt. 423, the court say,—" In interpreting these statutes,—i. e., statutes relating to the assessment and collection of taxes,—we should consider the title to be acquired under them as *stricti juris,* and should require a full and complete compliance with the requisitions of the statute. Before the title of the owner is divested by such a proceeding, we should insist upon everything tending to the security of the owner which is either prescribed in the terms of the act, brought within it by reasonable and strict construction, or which in the nature of the transaction is necessary to give ample effect to every safeguard which the legislature have endeavored to throw around the subject." To the same effect is *Bellows* v. *Elliot,* 12 Vt. 569.

" When the statute, under which the sale is made, directs a thing to be done, or prescribes the form, time, and manner of doing anything, such thing must be done in the form, time, and manner prescribed, or

the title is invalid; and in this respect the statute must be strictly, if not literally, complied with. *Chandler* v. *Spear*, 22 Vt. 388 ; *Sumner* v. *Sherman*, 13 Vt. 12 ; *Carpenter* v. *Sawyer*, 17 Vt. 124; 1 Vt. 359 ; *Kenney* v. *Beverly*, 2 Hen. & Mum. 318, 336 ; 1 Carter (Ind.) 649 ; 2 Carter (Ind.) 542 ; *Brady* v. *Offutt*, 19 La. Ann. 184 ; *Polk* v. *Rose*, 25 Md. 153, 159, 160 ; 10 Gill & Johns. 374; 11 Gill & Johns. 56 ; *Lagroe* v. *Rains*, 48 Mo. 536, 538 ; *Abbott* v. *Doling*, 49 Mo. 302, 304 ; *Large* v. *Fisher*, 49 Mo. 307 ; *Williams* v. *Underhill*, 58 Ill. 137 ; *Rule* v. *Parker*, 1 Cooke 365 ; *Bush* v. *Williams*, 1 Cooke 360.

" Trace it ever so far, and through ever so many hands, whoever sets up a tax title must show that he has complied with all the requirements of the statute, unless, indeed, the former owner were the purchaser. It is a cardinal principle, that a man shall not be divested of his inter- est in his property but by his own acts, or the operation of law, and where proceedings are instituted to change the title to real estate by operation of law, the requirements of the law, under which the pro- ceedings are had, must be strictly complied with." *Jackson* v. *Estey*, 7 Wend. 148, 151 ; *Cook* v. *Shepard*, 7 Cow. 88.

In *Russell* v. *Dyer*, 43 N. H. 396, the court, SARGENT, J., say that " It is an old maxim of the law, that every statute authority, to divest the title of one without his consent and transfer it to another, must be strictly pursued, or the title will not pass ;"—and he cites, in support of this position, *Grosvenor* v. *Little*, 7 Greenl. 376, *Mather* v. *Chapman*, 6 Conn. 54, *Mead* v. *Harvey*, 2 N. H. 498, and *Libbey* v. *Copp*, 3 N. H. 46.

Many more authorities in support of this position might be cited, but it is not necessary. It is founded so firmly upon principles of equity and natural justice, as not to admit of reasonable doubt.

Again : it is a maxim of the law, that notice is of the essence of things to be done.

It is a fundamental rule, that in judicial or *quasi* judicial proceed- ings, affecting the rights of the citizen, he shall have notice and an op- portunity to be heard before the rendition of any judgment, decree, or order against him ;—in other words, he must be warned, and have his day in court. If such is the law of notice in judicial proceedings, it applies with much greater force to the exercise of ministerial power, where the act is not only summary but the notice is merely construc- tive, where the proceeding is in the nature of a judgment, and termi- nates in the divestiture of the title to real estate. Blackwell on Tax Titles 214.

In *Russell* v. *Dyer*, 40 N. H. 173, BELL, C. J., in delivering the opinion of the court, says that in a matter so essential to the regularity and fairness of a sale at public auction, as proper notice of it, any con- struction which would dispense in any case with the statutory provi- sion requiring it is clearly inadmissible.

In *Neale* v. *Fenwick*, 4 Rand. 585, 591, the court quote with appro- bation from the opinion of MARSHALL, C. J., in *Williams* v. *Peyton*, 4 Wheat. 77, and say it was contended in the argument that no adver-

tisement of the sale was required by the law; that the law should direct a public sale of property without notice to be given, would be a perfect anomaly, and would lead to consequences so mischievous that we could not without the strongest reason be justified in imputing such a course to the legislature, especially where a man's highest estate—his land—was to be forfeited and lost to him by the summary process of distress and sale for the non-payment of taxes."

In that case, the law of 1782, amending and reducing into one the several acts for ascertaining taxes, &c., did not contain the provision for notice contained in the act of 1781.

In *DeLogney* v. *Smith*, 3 La. 418, PORTER, J., in delivering the opinion of the court, says,—" The citizen can only be deprived of his property in two ways,—by his own consent, or by forced alienation under the authority of law. The latter mode of transferring property derives all its efficacy from a strict pursuance of the formalities which the law prescribes. Where, then, these are wanting, there is not the alienation by law which can alone supply the want of consent by the owner.

In *Reaves* v. *Kershaw*, 4 Martin 513, the court held, that, although there is no law prescribing the way in which constables shall give notice of sales, or whether they are bound to give any notice, they are nevertheless bound to give the same notice as sheriffs upon the sale of property.

Again: it is said that collectors have no power to sell land except in pursuance of the provisions contained in the statute, and can only sell in the precise cases in which it has been so authorized. *Brown* v. *Veazie*, 25 Me. 359.

It would seem, then, upon general principles and upon authority, that a sale of land by a collector of taxes, without notice and without a strict and literal compliance with all those provisions of the statute for the protection of the citizen, is invalid.

How is it attempted to excuse this want of the notice, which the statute peremptorily requires? By asserting that the jury, under proper instructions, have found that there was no public place in the Location, consequently the law could not be complied with and the notice required by law could not be given, and the maxim "*Lex non cogit ad impossibilia*" is invoked to sustain this position.

It is further said, that this is not now an open question in this state, however it may be elsewhere; that this court have decided many times, that where there is no public place, notice is not necessary, and need not be posted in the town or place where the lands to be sold are situated.

Let us examine these positions.

There was, on the trial, no dispute about the following facts: There were six houses occupied by settlers, each having a small farm which he occupied. It is the province of the jury to balance evidence, weigh probabilities, determine the credibility of witnesses, and draw inferences and conclusions from facts proved. Here there was no evidence to be weigh-

ed, no probabilities to be balanced, the credibility of witnesses was not to be passed upon, and there was no occasion to call in a jury to draw inferences and conclusions from facts proved. Here the facts, so far as they related to the question of notice, were not in dispute.

In *Tidd* v. *Smith*, 3 N. H. 178, it is said that the question what is a public place, is a question partly of law and partly of fact; but when the facts are not in dispute whether a place is to be considered a public place within the meaning of the law, then it is purely a question of law, and ought not to be submitted to the jury. To hold that it is a question of fact for the jury would lead to uncertainty and serious confusion. This, then, being a question of law, upon the facts stated in the case I have no hesitation in saying that there was a public place in the Location, within the meaning and intent of the statute. In my view, in the absence of any place more public, a dwelling-house must be regarded a public place for the purpose of posting a notice of a sale of land for taxes. But it may be asked which of these six dwelling-houses was the public place where the notice should have been posted. My answer is, that for this purpose they were all public places. The law does not require the notice to be posted at the *most* public place ;— it simply and only requires it to be posted at *a* public place, and for this purpose a notice posted at either of them would have been sufficient. The term *public place*, as used in the statute, is relative. What might be a public place in a crowded and populous city, and what would be a public place in a small town, sparsely inhabited, are entirely different questions.

When, as we have seen, the object of the law is to give notice so that the delinquent tax-payer may have opportunity to pay his taxes and save his land, any construction which will tend to accomplish such a result is the true one. That the posting of a notice on one of these six dwelling-houses would have tended to give notice to the owner that his land was to be forfeited for the non-payment of his taxes, on the facts stated in the case, is not an open question. The occupants of these houses, some of them, were in possession under a contract with the owner to purchase. The former agent of the owner lived about six miles northerly of the Location, and in going to Errol, or to the settlements in Maine, he frequently crossed the Location ; and had a notice been posted on one of these six dwelling-houses this fact would have been known to all the others as well as to the former agent, and through them would have come to the knowledge of the owner. The occupants of these houses would undoubtedly have communicated to the owner the fact that his land, in which they had an interest, was advertised to be sold for non-payment of taxes. If either notice was to be dispensed with, that at the hotel in Lancaster could have been best omitted, if the real purpose was, as we must presume it was, to give notice so that the tax might have been paid without the sale of the land. Again, it is said that this is not now an open question, but I am not prepared to admit this proposition. Let us examine and see how it stands upon authority.

The first reported case, where the question of what is a public place for the purposes of posting a notice is considered, is *Tidd* v. *Smith, supra,* but upon this question that case is no authority. That case only decides that in the town of Deerfield, a town containing nearly two thousand inhabitants, situated in a comparatively densely populated part of the state, and which in 1823 contained two meeting-houses, eight taverns, six stores, and two post-offices, a shoemaker's shop was not, as a matter of law, a public place, for the reason that there were other places in that town that were so much more public.

The next case is *Wells* v. *Burbank,* 17 N. H. 393. In that case the title to the township of Success was involved, the plaintiff claiming under a tax title. It appeared that it was *wholly uninhabited.* There was no house or building upon it. The only indications of occupation were a small piece of pasture-land and a dam across a small stream. It was not necessary to determine whether a notice ought to have been posted, for there were other and more serious objections to the validity of the tax title ; but in the course of the opinion, PARKER, C. J., remarks, —" It is not necessary to settle at this time what may be a public place within the meaning of the statute. Practically, it is generally understood to mean a tavern, store, or other place where people are in the habit of resorting for the transaction of business. Perhaps a meeting-house, open from week to week for public worship, may come within the description. How we might hold in this case if there had been a dwelling-house, but no place more public, we have no occasion to inquire. As there was no inhabitant, there could be no public place." It will be observed that the court expressly refrain from giving any opinion upon the question whether, in the absence of any place more public, a dwelling-house may not then be a public place within the meaning of the statute ; so that, instead of this case being an authority for the plaintiff, from the form of expression used it must be regarded as sustaining the view of the defendants.

The next case wherein the question is considered is *Wells* v. *Company,* 47 N. H. 24, and that is similar to *Wells* v. *Burbank.* There was in *Wells* v. *Company* no dwelling-house, and the place was unorganized ; and the court, citing *Tidd* v. *Smith* and *Wells* v. *Burbank,* hold that it was not necessary to post a notice of the sale in the place where the lands lie. When this case was previously before the court, upon the authority of the cases above referred to, without considering the marked difference between those cases and the case then under consideration, the court said that the jury having found that there was no public place, it was not necessary that any notice should have been posted. The court there treat the question as not an open one, but there is a very strong intimation that there is doubt about the correctness of those decisions, and they say if the question were a new one their decision might be different.

Now when, as we have seen, the authorities upon which that decision is based do not support it, and when, upon general principles and upon the great weight of authority in other jurisdictions, it cannot be sus-

tained, that decision ought not to be conclusive in the decision of the questions now before us.

It is further said, that to reverse the former decision in this case would unsettle many titles, and therefore, though it may not be correct, it should not now be changed. An examination, however, of the records, shows that but very few, if any, titles depend on this question, —so few that this position is entitled to but little consideration. Entertaining these views, I am of opinion that

*The verdict should be set aside, and a new trial granted.*

RAND, J. This is a writ of entry to recover the grant of land called Wentworth's Location, and is the case reported in 52 N. H. 518. The plaintiffs rely upon a tax sale of the land made on January 29, 1850. It is conceded that no notice of the sale was posted in Wentworth's Location. The statute requires the advertisement of sale to be posted up at some public place in the town where the lands lie. Rev. Stats., ch. 46, sec. 7. The claim of the plaintiffs is, that for eight weeks preceding the day of the sale there was no public place in the Location, and therefore it was impossible to comply with the requirement of the statute. They introduced testimony tending to show that, for two or three years prior to and up to the time of the sale, there had been six families residing in the easterly part of the Location, in small, ordinary dwelling-houses, some made of logs and some of them framed,—two or three upon the easterly side of the Magalloway river, and the rest upon the westerly side; and that each of the settlers occupied a small farm, or clearing, where his dwelling-house was located.

The case calls for a judicial interpretation of the expression "public place," as it is used in the statute. The defendant contends that, as a matter of law, there must have been a public place in the Location at the time of the sale. The plaintiffs contend that the question is *res adjudicata* in New Hampshire, and we are referred in their brief to the following authorities: *Tidd* v. *Smith*, 3 N. H. 178; *Gibson* v. *Bailey*, 9 N. H. 175; *Wells* v. *Burbank*, 17 N. H. 393; *Scammon* v. *Scammon*, 28 N. H. 428; *Russell* v. *Dyer*, 40 N. H. 173—*id.*, 43 N. H. 396; *Wells* v. *Company*, 47 N. H. 255. I propose to examine these cases briefly in their order.

*Tidd* v. *Smith* decides that a shoemaker's shop in the town of Deerfield, in the year 1820, was not a *public place* within the meaning of "An act for taxing the lands and buildings of non-residents." The case was judicially interpreted in *Russell* v. *Dyer*, 40 N. H. 187, as follows: "In *Tidd* v. *Smith*, 3 N. H. 178, the question arose what was a public place within the meaning of the act for taxing non-resident lands, which provided that notice of the sale should be posted for three weeks in some public place in the town. The notice was posted in a house, then and for some days afterward kept as a public inn, and from that time used only as a shoemaker's shop. It was there held that the question, whether a particular place is to be considered a public place within the meaning of the statute, is a question partly of fact and partly of

law. The nature and situation of the places, and the uses to which they are applied, are matters of fact to be settled by a jury. But when these are settled, whether the place is to be considered a public place within the intent of the statute is purely a question of law. And the facts being of common knowledge to everybody, the court were of opinion that a shoemaker's shop, under the circumstances of that case, could not be deemed a public place within the meaning of that statute. The question then arose in the town of Deerfield, one of the oldest incorporated towns, having as early as 1800 a population of nearly 2,000, and situated in a densely peopled portion of the state, and having in 1823, two years before this decision, two meeting-houses, eight taverns, six stores, and two post-offices."

*Gibson* v. *Bailey* was a writ of entry to recover a tract of land in Unity. The tenants claimed by virtue of a tax sale, and, for the purpose of showing that the sale was valid, they introduced a record of a warrant for a town-meeting, and a return thereon, as follows : " Unity, March 11, 1823. We, the selectmen of Unity, certify that we have posted up a true copy of the within warrant at the house of Francis Chase, fifteen days previous to said meeting." The court held the return insufficient, because it did not show that the warrant was posted at a public place; and also, that the return might be so amended as to show " that Francis Chase's was a public place." The case does not seem to be very important. It may have some bearing upon the question whether or not, in case of doubt, an officer may be permitted to select a public place.

The next case is *Wells* v. *Burbank*. This is a leading case, and a very important one. It was trespass for breaking and entering the plaintiff's close in the township of Success. It was admitted that the township was uninhabited. The court say,—" It is not necessary to settle at this time what may be a public place within the meaning of the statute. Practically, it is generally supposed to mean a tavern, store, or other place where people are in the habit of resorting for the transaction of business. Perhaps a meeting-house, open from week to week for public worship, may come within the description. How we might hold in this case, if there had been a dwelling-house within the township, but no place more public, we have no occasion to inquire. As there was no inhabitant, there could be no public place. *Lex non cogit ad impossibilia.* The result is, not that the tax could not be collected because no advertisement could be posted in a public place in the township, but that it might be collected without such advertisement, if the other notices required by the statute were duly given."

I doubt the soundness of the doctrine advanced in the last paragraph of the above quotation, and I do not see how it can be reconciled with the doctrine of *Russell* v. *Dyer*, 40 N. H. 173 and 43 N. H. 396. *Russell* v. *Dyer* holds, that where the law points out a particular way in which a man's property may be sold to pay his debts, and it is impossible to proceed in that way, the property cannot be sold. *Wells* v. *Burbank* holds that where the law points out a particular way in which

a man's property may be sold for taxes, and it is impossible to proceed in that way, the sale may be made in some other way. Can the two cases stand side by side, and lean upon the same principle of law ?

"It is an old maxim of the law that every statute authority to divest the title of one without his consent and transfer it to another must be strictly pursued, or the title will not pass." *Olcott* v. *Robinson,* 20 Barb. 150 ; *Grosvenor* v. *Little,* 7 Greenl. 376 ; *Mather* v. *Chapman,* 6 Conn. 54 ; *Mead* v. *Harvey,* 2 N. H. 498 ; *Libbey* v. *Copp,* 3 N. H. 46 ; *Davis* v. *Maynard,* 9 Mass. 242 ; *Williams* v. *Amory,* 14 Mass. 20 ; *Ronkendorf* v. *Taylor,* 4 Pet. 349 ; *Slater* v. *Maxwell,* 6 Wall. 276 ; Blackwell on Tax Titles 294 ; *Williams* v. *Peyton's Lessee,* 4 Wheat. 78 ; *Thatcher* v. *Powell,* 6 Wheat. 119 ; *Jackson* v. *Shepard,* 7 Cow. 88 ; *Morton* v. *Reeds,* 6 Mo. 64.

In *Wells* v. *Company,* 47 N. H. 255, BARTLETT, J., comments as follows upon *Wells* v. *Burbank* and *Russell* v. *Dyer :*

"In *Wells* v. *Burbank,* 17 N. H. 394, it was decided that ' it is not necessary to post an advertisement of a sale for taxes in an unincorporated place, which is uninhabited ; ' and we do not understand the authority of this case upon that point to have been shaken by any subsequent decision. *Russell* v. *Dyer,* 42 N. H. 399. We do not now see any sufficient reason for overruling the case in that particular. It cannot, as in *Ruseell* v. *Dyer,* 40 N. H. 184, be presumed that the legislature did not intend to subject such an uninhabited place to the statutes relative to taxation, since this and other similar places have for many years been specially named in our statutes as objects of taxation, and the taxation without the power of collection by sale would seem futile ;— so that, upon a careful comparison of the objects and provisions of the statutes in question here, with those considered in *Russell* v. *Dyer,* as well as in reasons of public policy, we find sufficient grounds for a distinction between the latter case and *Wells* v. *Burbank.* Under these circumstances, as the doctrine of *Wells* v. *Burbank* does not seem likely to work any real practical injustice, and as it is probable that a very considerable number of titles to real estate acquired during the twenty years since the decision in that case was made, and while it has been unquestioned by the court and undisturbed by legislation, may depend upon the rule there laid down, we should deem it our duty under the law not now to question its correctness."

In regard to the above quotation, I wish to remark, in the first place, that I do not find the " sufficient grounds for a distinction" spoken of ; and, in the second place, that it is quite clear that *Wells* v. *Burbank* was not altogether satisfactory to the court that rendered the decision in *Wells* v. *Company.* For one, I am willing that *Wells* v. *Burbank* should stand, not because I think it is good law, but because it might work mischief in disturbing titles to overrule it at the present time. But I am unwilling to travel any further in that direction.

The case of *Scammon* v. *Scammon,* 28 N. H. 419, is one of the cases cited by the plaintiffs in support of the proposition that the matter in controversy here is *res adjudicata.* It does not seem to be an impor-

tant case. It merely decides that when a warrant is returned to have been posted at a house of public worship, this will be *prima facie* taken to be a public place, and the party who objects will be bound to show the grounds of his objection.

The distinction between the present case, and the cases of *Wells* v. *Burbank* and *Wells* v. *Company*, is broad and clear. In both of those cases the question was as to the necessity of posting up advertisements in places entirely uninhabited. In the present case, the question is as to the necessity of posting up an advertisement in a place where there are six inhabited dwelling-houses. The very point to be decided now was expressly left open in *Wells* v. *Burbank.* The court say,—"*How we might hold in this case if there had been a dwelling-house in the township, but no place more public, we have no occasion to inquire.*"

It is not easy to see how a purchaser at a tax sale could infer from *Wells* v. *Burbank* that the court would regard as unimportant a failure to post an advertisement in the place where the lands to be sold lay, if there were six inhabited dwelling-houses there.

There is also a very significant passage in *Russell* v. *Dyer*, 43 N. H. 397, which ought not to be overlooked. " Three different views present themselves to the court. It might be held that nothing could be regarded as a public place except certain places and buildings designed for public use, as houses of public worship, taverns, post-offices, and stores, which might be regarded as in law public, because of their public use. Another view might regard any place open to public observation, and likely to attract public notice, as public, so that every door on Washington street or Broadway would be a public place, and all of them equally entitled to be regarded as the most public places in the city where they are. Another view which was adopted by the court was, that public place is a relative term, applying to different objects and situations according to the condition and character of the town or place which formed the point of inquiry ; and, in judging what was to be deemed a public place, regard must be had to the question whether such place is, from situation, circumstances, and use, one of the places where the inhabitants and others most frequently met, or resorted, or had occasion to be, so that a notice posted there would, for that reason, be likely to meet public view and attract observation. * * It may be observed, that upon either of the last views it is hardly possible to conceive any inhabited place which would not have more than one public place."

It seems, then, that the precise question involved in this controversy, instead of having been adjudged heretofore in accordance with the claim of the plaintiffs, was declared to be an open question in 1845, when *Wells* v. *Burbank* was decided ; and in 1861, when *Russell* v. *Dyer* was decided, the court settled the true definition of a " public place," if it had not been previously settled, and announced that, according to that definition, it would hardly be " possible to conceive any inhabited place which would not have more than one public place."

We come now to the opinion which has already been rendered in this case. The court say,—" If the whole question what constitutes a

public place for the purpose of notice were a new one, there might be good reason to give it a more careful examination than it has yet received in this state, and to consider whether the true construction of the statute is not that notice should be posted in the town, inhabited or uninhabited, travelled or untravelled; whether the notice should not be posted in one of the most public places, in a place as public as any, or in a place where it would be as likely to be seen as in any; whether the word " public," used to describe a place of notice, is arbitrary and technical, or whether it requires that notice should not be posted at a place in the town where it would be materially less likely to be seen by such persons as might happen to be in or to go into the town, than at some other place in the same town ; whether the statute does not imperatively require notice to be posted in the town, and whether the chief object of the word " public " was not to prevent an intentional or negligent concealment of the notice, by posting it at a place not public as compared with other places in the town ; whether the word means anything more than a place relatively and comparatively public, and, at all events, not essentially and peculiarly less public than other places in the same town, if there is no place of common resort. Very strong reasons might be given for such a construction."

The above argumentative statement is very clear and convincing; and I think it is in accordance with the definition of a " public place" previously adopted in *Russell* v. *Dyer*. But the court go on to say,— " But the general question is not an open one (*Wells* v. *Company*, 47 N. H. 235, 255); and the manner in which the settled construction was applied at the trial of this case the defendant cannot complain of. If the construction given to the statute from 1825 (*Tidd* v. *Smith*, 3 N. H. 178) to the present time is erroneous, the introduction of the true construction, and the retrospective application of it, might now unsettle titles and disturb vested rights that have grown out of the established construction." To this I cannot assent; and I have already examined the cases referred to, and stated the reasons why I think the precise question in this case is still an open one, unless we are to be bound by the decision already rendered in the case. There was a motion for a rehearing, and the entry upon the clerk's docket is as follows : " Motion to bring forward for rehearing not granted, upon the understanding between the parties and the suggestion of the court that all questions as to notice might be raised on another trial." I think it is plain, from this entry, that the court desired to give the matter of notice a further examination. It seems to be equivalent to an entry granting a rehearing upon the question of notice.

CUSHING, C. J. The main question in this case, which is as to the meaning of the term *public place* in the statute, appears to me not to be attended with much difficulty.

The cases which have been cited by the industry of counsel are *Tidd* v. *Smith*, 3 N. H. 178, *Wells* v. *Burbank*, 17 N. H. 393, *Russell*

v. *Dyer,* 40 N. H. 173, *Scammon* v. *Scammon,* 28 N. H. 428, *Gibson* v. *Bailey,* 9 N. H. 175, *Wells* v. *Company,* 47 N. H. 255, and *Russell* v. *Dyer,* 43 N. H. 396.

The exact point of this case has not, I think, been decided in either of the cases cited, but I think the fair result of the reasoning in those cases is the conclusion reached by my brother STANLEY.

In *Wells* v. *Burbank,* the town of Success, where the lands in dispute lay, had no inhabitants, and the *dictum* of PARKER, C. J., was carefully qualified by him with the remark, " How we might hold in this case if there had been a dwelling-house within the township, but no place more public, we have no occasion to inquire." This remark, I think, makes the *dictum,* which was not the point actually decided, entirely inapplicable to the principal case.

I do not think, either, that the maxim *lex non cogit ad impossibilia* is rightly applied. It does not appear to me that a tax is a debt of any higher obligation than any other honest debt ; and I can see no reason why the requirements of the statute should not be as rigorously fulfilled in appropriating a man's property to the payment of a tax, as in appropriating it to the payment of a debt. There is no principle which I can find, in morals or justice, by which the state is bound to any more rigorous observance of its laws in enforcing the payment of other honest debts, than in enforcing the payment of its own claims.

In *Russell* v. *Dyer,* twice before the court, while the remarks of the learned judges' *arguendo* tend very strongly to show that they would have held that there was a public place in Wentworth's Location—the land now in dispute—it was in fact held that the officer's return, that there was but one public place in Nash & Sawyer's Location, was conclusive on that point ; and the statute requiring that the advertisement should be posted in two public places, it was impossible to comply with the law, and therefore the levy was void.

The impossible thing, to which the law compelled no one, was the collection of the debt out of that property, just as, in *Wells* v. *Burbank,* it would seem that the impossible thing ought to have been the collection of the tax. It appears to me that *Russell* v. *Dyer* substantially overrules the *dictum* in *Wells* v. *Burbank,* although a distinction, which I think is without a difference, has been taken between the collection of a tax and of a debt.

The question in regard to the proper parties does not necessarily arise in this case, and it is not necessary to form or express any opinion upon it.

After the foregoing opinions were delivered, *Ray, Drew,* and *Jordan,* with whom were *Geo. A. Bingham* and *Sargent & Chase,* in behalf of the plaintiffs, moved for a rehearing, and argued in support of the motion, as follows :

It was conceded that no notice of the sale was posted in the Location.

The plaintiffs' testimony tended to show that there was no public place in said Location, either before, or during the eight weeks before, January 29, 1850, the day it was sold. Six families resided in the easterly part thereof for two or three years preceding the day of sale, in small log or framed houses,—two or three on the easterly side of the Magalloway river, and the rest upon the westerly side. Each settler's dwelling-house was located on a small farm or clearing.

There had never been any church, meeting-house, school-house, hotel, office, mechanic-shop, store, sign-post, guide-post, board or box by the wayside, no public highway or bridge, or any other place, except said dwelling-houses, at which a notice of said sale might have been posted. No person had ever known a notice or advertisement of any kind to be posted in the Location before said sale.

Upon the question now before the court, the above statement must be taken to be true, because the jury, under the instructions given by the presiding judge, returned a verdict in the plaintiffs' favor. Whatever the plaintiffs' testimony tended to prove after verdict in our favor, must be taken as being proved.

The question then arises, whether or not, as matter of law, the court ought to have instructed the jury that it was absolutely necessary for the sheriff, at the time named, to post a notice of this sale at some dwelling-house on the Location, as the defendant requested;—or, in other words, Ought the court to have ordered a nonsuit or verdict for the defendant? The solution of this inquiry depends upon whether it is a question of law merely, on the one hand, or a question of fact merely, or a mixed question of law and fact, on the other. If the latter, the case was properly sent to the jury. In the language of Doe, J., in *Cahoon* v. *Coe*, 52 N. H. 526, " The manner in which the settled construction was applied at the trial of this case the defendant cannot complain of." The whole matter is narrowed down to a single point, namely, whether or not, as a matter of law, a mere private dwelling-house is *prima facie* and necessarily always a public place, where there is no place more public. We deny that such is the law. The statute required the advertisement to be posted, not necessarily in the town where the lands were situated, but only to be posted there in the event such town contained a public place. This is the true interpretation. This gives the proper and legitimate effect to all the clauses which the section referred to contains. Rev. Stats., ch. 46, sec. 7. Such construction has obtained among our best lawyers and most eminent judges ever since the existence of the statute. More especially has this opinion prevailed among the bar and judiciary resident in the counties of Coös, Carroll, and Grafton, where the question now presented could only arise. In the other sections of the state, which have long been settled and thickly populated, no difficulty has ever arisen in regard to the term " public place."

This question involves the construction of a statute which was intended to apply at large throughout the entire state, and the duty of the court is, not to encroach upon the province of the legislature, but, in

the light of common-sense, good conscience, and legal reason, to endeavor to ascertain what the legislature meant when they used the phrase " public place." We deny that by any fair or reasonable construction of the statute it can be inferred that the legislature meant to include a private dwelling-house when they used the term "public place" in the statute. The defendant's counsel lay excessive stress upon the clause of the statute requiring the advertisement to be posted in the town where the land lies. They ignore altogether the words public place. That phrase is clearly one of limitation. The legislature intended that the notice should be posted in a public place, just as much as they intended it should be posted in the town. The most natural and genuine way of construing a statute is to construe one part by another part of the same statute, so that, if possible, no sentence, clause, or word shall be treated as superfluous, void, or insignificant, especially where the two clauses are parts of the same section inseparably connected with and necessarily dependent on each other. Blackwell on Tax Titles 610 ; *ib.*, 56, and authorities cited. This doctrine is elementary, and needs no citation of authorities.

" It is safer," says Mr. Justice ASHURST, " to adopt what the legislature have actually said, than to suppose what they meant to say." *Jones v. Smart*, 1 Term R. 51 ; *Hardin v. Owings*, 1 Bibb. (Ky.) 214 ; *Briggs v. Georgia*, 15 Vt. 72.

The phrase public place is entitled to greater weight, as found in this section of the statute, than that portion of the statute referring to the towns wherein the lands lie. Had the legislature intended that a notice should be posted in the town anyway, the words public place would have been omitted.

The maxim *expressio unius est exclusio alterius* applies here in reference to the term public place. Words are to be understood according to the most known and popular use of them, unless there is something in the statute to restrain their operation. Were it possible to conceive of any technical sense in which these words might be used, that sense favors the plaintiffs' view instead of the defendant's. Construe this phrase either liberally or strictly, and its meaning is clear and certain. There is no doubt about the popular or the legal sense in which these words are, and always have been, used and understood.

What is a public place ? See definitions. " Public "—Worcester's Dictionary ;—" Public "—Webster's Dictionary ;—" Public "—2 Bouvier's Law Dictionary.

A distinction has been made between the terms *public* and *general ;* they are sometimes used as synonymous. The former term is applied strictly to that which concerns all the citizens and every member of the state, while the latter includes a lesser, though still a large, portion of the community. 1 Gr. Ev., sec. 128.

" Place "—Webster's Dictionary. This word in the statute under consideration has a more limited signification than *town*, because it refers to some point within a town. But the place intended must be a public place, as contradistinguished from a private place : " Place of

business;"—2 Bouv. Law Dic.;—"Public place"—*Commonwealth* v. *Feazle,* 8 Grat. (Va.) 585 ; *Commonwealth* v. *Vandine,* 6 Grat. 589 ; 18 Ala. (N. S.) 415 ; 12 Grat. 492.

The word public, as used in our statutes, has a well defined and well understood meaning, its legal and popular sense being one and the same thing exactly, and stands opposed to—contradistinguished from—the word private : as, public service—private service ; public sale (auction)—private sale ; public house—private house ; public act—private act ; public road—private road ; public place—private place.

What is the law of New Hampshire as to public place ? *Tidd* v. *Smith,* 3 N. H. 178, tried February, 1824, decided February, 1828. Tax sale, March, 1820 (Rockingham county). Advertisement posted January 11, 1820, at the dwelling-house of Jesse Bean, who commenced keeping tavern in his house, July, 1819. On January 18, 1820, Bean ceased to keep tavern, but for several months carried on his business of a shoemaker in the room where the advertisement was posted ; and there was evidence that many persons resorted to and frequented said house for several weeks after Bean ceased to keep tavern. The court instructed the jury that Bean's house could not be considered a public house after January 18, 1820, and that the sale was void. The superior court consisted of RICHARDSON, C. J., GREEN and HARRIS, JJ. The contention before the superior court was, that it ought to have been left to the jury to say whether the place where the advertisement remained was a public place or not. The court remarked (page 180),—" It is a matter of no inconsiderable importance that it should be settled what is to be understood by the words public place in our statutes, for they are words of frequent occurrence there "—citing various instances. After citing the various instances where the words public place are used in the statute, the court proceed to say,—" In all these instances the words public place were intended, we imagine, to express the same thing, and they must have been very generally understood by everybody in the same sense ; for we do not recollect that any question has ever before this time been raised upon the subject."

" The general understanding of community on a question of this nature is entitled to much respect, and it is believed this understanding has viewed as 'public places' houses of public worship, inns, and perhaps, in some places, shops where goods are retailed. We are not aware that a mechanic's shop has ever been considered a public place anywhere."

*Cambridge* v. *Chandler,* 6 N. H. 271, tried May, 1830, decided July 1833. Tax sale, January 22, 1824 (Coös county). It appeared that the interest of the delinquent proprietors was advertised for sale in Cambridge, by putting an advertisement upon a board which was fixed in the sand by the side of Androscoggin river. There was no settlement nor inhabitant in Cambridge at that time. Hunters used to pass up and down the river. There was a public highway laid out through Cambridge, leading from Errol to the state of Maine, as early as the

year 1812, which has been travelled ever since. Joel Parker and Jeremiah Smith were counsel for the defendant: Joseph Bell, for the plaintiff. The defendant's counsel, in their brief (page 279), say, in answer to the objection that an advertisement was not posted up in a public place in Cambridge, "that there was no public place within the meaning of the statute in the town of Cambridge"—citing *Tidd* v. *Smith.* " It was therefore unnecessary to post an advertisement there. *Lex non cogit ad impossibilia.*"

*Cardigan* v. *Page*, 6 N. H. 182, decided July, 1833. Tax sale, January 21, 1823 (Grafton county). Land in dispute was in Alexandria. RICHARDSON, C. J. (page 190), says,—" As soon as it is understood to be settled that there must be a return stating the time when the warrant was posted up, and the place where, which must appear to be a public place, the returns will be at once correct in these particulars," &c.

*Gibson* v. *Bailey*, 9 N. H. 168 (Sullivan county), decided July term, 1838. " Sale for taxes of land in Unity, December 20, 1823. The defendants offered in evidence a warrant for town-meeting to be held in March, 1823, with a return thereon signed by the selectmen of Unity: "that we have posted up a true copy of the within warrant at the house of Francis Chase, fifteen days previous to said meeting." Upon a motion to amend the collector's return, or sale, the defendants offered the affidavit of Thirston, the collector, made November 7, 1837, setting forth that he posted up the original notification on the day of its date (Sept. 26, 1823) at Francis Chase's tavern in Unity, &c. PARKER, C. J. (page 175), says,—" The return of the posting up of the warrant for the town-meeting is insufficient. It does not state when it was posted up; nor does it show that it was posted at a public place;"—see, also, page 178.

*Wells* v. *Burbank*, 17 N. H. 393, decided August, 1845 (Coös county). Tax sale, January 4, 1842. " It was admitted that the township was uninhabited, and was mostly a wilderness, but there was some cleared land occupied as a pasture, and a dam across the stream to raise the water for the convenience of floating timber. The plaintiff offered in evidence, from the clerk's office, a copy of the advertisement, with the certificate of one Isaac Hager that he posted the same in Success on a white pine tree near a dam, as public a place as any in the township, stating the dates of posting up and taking down the same. The defendants objected to the validity of the tax sale for several reasons, which are stated in the arguments of their counsel"—pp. 395, 396. Bellows, for the defendant, argued that the statute required notice of the sale to be posted in the towns where the land lay, and says further as follows: " The defendants offered to show that no notice was posted in Success. If such posting was necessary, the evidence was improperly rejected "—pp. 398, 399. Wells, Young, and Perley, arguing for the plaintiff (p. 402), say,—" It was unnecessary to advertise in Success, there being neither inhabitants nor public place there. In *Cambridge* v. *Chandler*, 6 N. H. 271, it was yielded by counsel and court

that when there was no public place in a town, the posting of an adver-
tisement there was unnecessary "—citing *Tidd* v. *Smith.* PARKER, C.
J. (p. 411), says,—" The eighth exception must be overruled. It is
not necessary to settle at this time what may be a public place within
the meaning of the statute. Practically, it is generally supposed to
mean a tavern, store, or other place where people are in the habit of
resorting for the transaction of business. Perhaps a meeting-house,
open from week to week for public worship, may come within the de-
scription. How we might hold in this case if there had been a dwell-
ing-house within the township, but no place more public, we have no
occasion to inquire. As there was no inhabitant, there could be no
public place. *Lex non cogit ad impossibilia.* The result is not that
the tax could not be collected because no advertisement could be post-
ed in a public place in the township, but that it might be collected
without such advertisement if the other notices required by the statute
were duly given. The evidence on this point was therefore imma-
terial."

*Baker* v. *Shepherd*, 24 N. H. 208, decided December, 1851 (Grafton
county). Warrants for a town-meeting were posted at the town-house
and at the stage office of J. H. Thompson in Holderness. In one of
the returns this was further described as being a public place. This
stage office was a shoemaker's shop, and a place where stages called to
take and leave passengers and parcels. BELL, J. (p. 212), says,—
" It has never been held, that we are aware, that a stage office like that
described in this case is a public place within the meaning of the stat-
ute regulating town-meetings, nor is it necessary now to decide it. The
case fails to furnish the proper materials for such a decision, since a
place may be justly deemed a public place in one town which would
have no claims to that character if the question arose in a greater
place of population and business." In this case he clearly recog-
nizes the idea that what is a public place in small towns is a question
of fact and not of law, to be determined by the jury under proper in-
structions.

*Scammon* v. *Scammon*, 28 N. H. 419 (Rockingham county), decided
July, 1854. Tax assessed in 1849. The return on the warrant showed
that the copies were posted at the Baptist meeting-house, and without
stating that said Baptist meeting-house was a public place. And the
plaintiff objected that it did not appear that said warrant was posted at
a public place. BELL, J. (p. 428), says,—" The first objection to the
tax under which the defendants justify is, that the warrant for the
town-meeting was not posted in a public place. It is returned to have
been posted at the Baptist meeting-house. It is said such a meet-
ing-house is not necessarily a public place, and this is true; but we
understand it to have been settled here that houses of public worship
are ordinarily and *prima facie* to be regarded as public places. There
are but few towns in the state where there are to be found any places
of more public character than meeting-houses; and our impression is,
that so extensively has the idea prevailed that meeting-houses are to be

regarded as public places, that it has hardly ever been deemed necessary to add to a return that a notice had been posted at a meeting-house, the further fact that it was a public place, as perhaps it is most judicious to do ; and it might now be attended with mischievous consequences to hold all such returns defective. Where a warrant, then, is returned to have been posted at a house of public worship, it will be *prima facie* taken to be a public place, and the party who objects that from the character of the town or of the house it is not properly to be so considered, is bound to show the grounds of his objection."

*Russell* v. *Dyer*, 40 N. H. 173, decided January term, 1860 (Coös county). The sale of the equity of redemption was made June 12, 1848. Nash & Sawyer's Location was inhabited, Crawford's Purchase uninhabited. But one notice of the sale of the equity was posted in Nash & Sawyer's Location, and none in Crawford's Purchase, —there being but one public place in the former and none in the latter. The plaintiff objected that the sale of the right to redeem passed no title to Dyer. In the above case (pp. 186 and 187), the court consider the meaning of the phrase " the most public places," and declare that " the intention of the statute which requires notices to be posted is obviously to give publicity to the sale and to invite purchasers " (pp. 187, 188).

Same case reheard, 43 N. H. 396. SARGENT, J., delivering the opinion, says,—" The same judges only who made the decision are now qualified to act in the case." The views of the court in the case, as reported in 40 N. H., are reäffirmed (pp. 397, 398).

The following remark by SARGENT, J., is *obiter dictum :* " It may be observed that upon either of the last views, it is hardly possible to conceive any inhabited place which would not have more than one public place" (p. 398). No such case as ours was before the court. We are surprised to see this remark quoted as an authority." In commenting on *Wells* v. *Burbank*, Judge SARGENT remarks that the cases are not the same. " The law relating to sales of land for taxes was not necessarily the rule for levies on execution, and the court not being bound by that case as authority, decided, upon the convictions of their own minds, upon the case before them" (p. 399). *Wells* v. *Company*, 47 N. H. 235, decided December, 1866 (Coös county). George P. Meserve, sheriff, sold Sargent's Purchase, January 10, 1843. Posted notice in Sargent's Purchase on spruce tree in woods, which was not an inhabited place. It also appeared that the notices posted up by the sheriff in Sargent's Purchase were taken down by him November 4, 1842 (pp. 246, 247, 248), two months and upwards before the sale. The plaintiffs objected that the notice was not posted in the most public place on said Purchase (p. 249).

BARTLETT, J. (p. 255), says,—" Sargent's purchase, though uninhabited, might properly be taxed [citing *Wells* v. *Burbank* and *Russell* v. *Dyer*, Laws 1831, p. 26, Laws 1805, p. 448], and was made liable to a tax by the legislature." Laws November, 1840, p. 173. " In *Wells* v. *Burbank*, 17 N. H. 394, it was decided that it is not necessary to post an advertisement of a sale for taxes in an unincorporated place which

is uninhabited." "And we do not understand the authority of this case to have been shaken by any subsequent decisions." "We do not now see any sufficient reason for overruling the case in that particular. It cannot, as in *Russell* v. *Dyer*, 40 N. H. 184, be presumed that the legislature did not intend to subject such an uninhabited place to the statutes relative to taxation, since this and other similar places have been specially named in our statutes as objects of taxation, and the taxation without the power of collection by sale would seem futile;—so that, upon a careful comparison of the objects and provisions of the statutes in question here, with those considered in *Russell* v. *Dyer*, as well as in reasons of public policy, we find sufficient ground for a distinction between the latter case and *Wells* v. *Burbank.* * * We must therefore regard the authority of that case as decisive here. If, therefore, Sargent's Purchase was uninhabited, it was unnecessary to post any notice in its limits" (pp. 255, 256).

*Cahoon* v. *Coe*, 52 N. H. 518, tried February 7, 1871, decided December, 1872 (Coös county). Tax sale, January 29, 1850. This case was fully argued at the Haverhill law term, in December, 1871. Several briefs were furnished on each side. The court delivered an opinion at the Lancaster law term, July, 1872, overruling all the objections to the plaintiffs' title except the ninth—52 N. H. 521—and invited further argument upon that point. The case was continued to the December law term, 1872. Additional briefs were furnished, and, at said law term, oral arguments were made touching said ninth objection, and that also was then overruled. At the Colebrook trial term, February, 1873, judgment was rendered on the verdict. The defendant immediately commenced an action of review, which was entered at the trial term, August, 1873, and continued. At the law term, December, 1873, the defendant's counsel moved for a rehearing. The court gave them leave to renew their exceptions in regard to the lack of posting an advertisement on the Location. (See 52 N. H. 522.) The cause was tried at Colebrook, February term, 1874, before ISAAC W. SMITH, J., and the verdict was again in the plaintiffs' favor. In the meantime the court caused their unanimous opinion to be published in the fifty-second volume of our reports. The plaintiffs' counsel and the court were ready to hear the case again at the law term, June, 1874. The defendant and his counsel then sought a continuance, and the continuance was granted, which brought the case here. Throughout these entire proceedings, after the opinion was delivered, no suggestion was made by any member of the court that they were not unanimous in their decision, or were not completely satisfied with the result to which they had arrived. The court then consisted of SARGENT, C. J., FOSTER, HIBBARD, DOE, JEREMIAH SMITH, JJ., while LADD, J., did not sit, because he had been counsel for the plaintiffs, and advised the bringing of the suit. The counsel who begun the action fully relied on what they deemed to be the settled law of New Hampshire ever since the decision was made in *Tidd* v. *Smith*, and on the opinions of such eminent jurists as the late Chief Justices JOEL PARKER, ANDREW S.

Woods, and Henry A. Bellows, which appear in Mr. Bingham's brief. We have also a right to quote the legal opinion of the late Hon. John S. Wells in our favor, because it appeared, on the last trial of this case before the jury, that Charles Bellows, Esq., upon his advising that the posting of a notice upon Wentworth's Location, under the circumstances of this sale, was unnecessary, and that the same was otherwise correct, paid the sum of $1,500 for the demanded premises when he took the conveyance from John Bellows. See *Bellows* v. *Parsons*, 13 N. H. 256, and authorities there cited upon the doctrine of *stare decisis.*

There is not an authority in the New Hampshire reports to sustain the view taken by the defendant on this question. Only a single *dictum* can be found giving the defendant's view the slightest countenance or support (43 N. H. 397), and that is in a case where the facts were entirely different, as well as the statute by which it was governed, as has been decided by the highest court in New Hampshire (47 N. H. 255). In view of the uniform course of judicial decision, of the opinions of our ablest lawyers, and of the nearly uniform practice of sheriffs touching this subject for nearly half a century, the conclusion is irresistible, as it seems to us, that our construction of the statute is the true one. Had it not been so considered, the legislature would have provided for the posting of a notice in every inhabited town or place, irrespective of the fact whether there was any public place within its limits or not.

It is just as wrong for the court to apply the doctrine of *lex non cogit ad impossibilia* to an uninhabited town, as to a town which has no public place, in the popular or legislative sense, although inhabited. The doctrine has never obtained within this state that the court would apply any more rigid, stringent, or different rules of construction to the statutes under which real estate is sold for taxes, than to other statutes concerning other subjects. A substantial compliance with the provisions of the statute is all that has ever been required. *Cass* v. *Bellows*, 31 N. H. 501, is a strong case, and is in point in regard to publishing notice of sale "three weeks successively," under Rev. Stats., ch. 46, sec. 6. *Chandler* v. *Spear*, 22 Vt. 388, 403 ; *Bachelor* v. *Bachelor*, 1 Mass. 256 ; *Spear* v. *Ditty*, 8 Vt. 419 ; *Brown* v. *Hutchinson*, 11 Vt. 569 ; *Bellows* v. *Elliot*, 12 Vt. 569, 574, 575 ; *Shaw* v. *Orr*, 30 Iowa 359 ; *Ives* v. *Lynn*, 7 Conn. 507 ; *Pickett* v. *Allen*, 10 Conn. 155 ; *Lackawana Iron Co.* v. *Fales*, 55 Pa. St. 90; *Cuttle* v. *Brockway*, 24 Pa. St. 125. It would be going no further to hold in this case that it was unnecessary to post a notice on the Location, than the court has repeatedly gone in holding that a warrant in the case of unincorporated places is a list under Rev. Stats., ch. 47, secs. 3 and 4, and ch. 46, secs. 2 and 3— *Wells* v. *Burbank*, 17 N. H. 393, 407, 408, *Wells* v. *Company*, 47 N. H. 235, 256, *Homer* v. *Cilley*, 14 N. H. 85, 100 ; or that a tax sale, made after the return day of the warrant, is valid —*Smith* v. *Messer*, 17 N. H. 420, 431, *Cahoon* v. *Coe*, 52 N. H. 525, and authorities cited. A tax title is just as meritorious, and ought to be

treated as fairly by the court, as that of a land speculator going about the country and buying up a fragment of the original title for little or nothing, years after the land has been abandoned by the original proprietors.  *Jaquith* v. *Putney*, 48 N. H. 138, 141.

It is absurd for the defendant's counsel to contend that the owners of Wentworth's Location did not have abundant constructive notice of the sale. They well knew it was liable for a state tax annually ; that such tax was invariably committed to the sheriff of Coös county for collection ; that if not previously paid, a copy of the list, &c., would be on file from the eighth day of the June session of the general court until the first day of September ; that the land would then be advertised in the state paper at Concord and in the county paper, and also at a public place at the county seat. It is conjectural merely, that a notice of this sale posted on the Location would have been of the slightest consequence, by way of inducing anybody to pay the tax for which the land was sold.

The suggestion has been made, that the court below erred in submitting the case to the jury instead of granting the defendant's motion for a nonsuit, on the ground that the facts were not in dispute ; that they were substantially agreed upon by both parties ; and therefore that the only matters to be settled were questions of law, which were for the court to determine instead of the jury. What facts were in dispute ? What facts were agreed on ? The defendant asserted that there was a public place in Wentworth's Location. The plaintiffs denied it. That issue was submitted to the jury upon the evidence adduced by both sides.

The only fact agreed on, or about which there was no contention, was the existence of five or six private dwelling-houses in that township. It is too clear for argument, that a mere private dwelling-house is not generally a public place. Some dwelling-houses, by reason of the uses to which they are devoted, may become public places. In a given case where this issue is made respecting a dwelling-house, one party affirming that it is a public place and the other party denying it, the question must, from the necessity of the case, be referred to the jury, under proper instructions. It is elementary, that " to balance evidence, weigh probabilities, determine the credibility of witnesses, and draw inferences and conclusions from facts proved [or admitted, it does not matter which], belongs to the jury." *Pray* v. *Burbank*, 11 N. H. 290. It is usurping the constitutional functions of the jury for the court to undertake to draw the inference that any of the dwelling-houses on Wentworth's Location was a public place, when that fact was denied, and no public use of such dwelling was shown, as both verdicts in this cause have established. Now will this court assume the fact of the existence of a public place there, merely from the existence of the other fact that there were private dwelling-houses in the town, when two juries, upon full, fair, and satisfactory trials, have found there was no such thing ? Bear in mind, that if the matter is proper to be submitted to the jury at all, no fault is found with the instructions given.

## CAHOON v. COE.

We quote the language of Judge HUNT in *R. R. Co.* v. *Stout*, Wall. 637, touching the province of the jury in a case of negligence alleged against the corporation, where the facts were conceded, and the only contention was as to the deduction to be drawn therefrom— whether such deduction should be made by the court or be found by the jury. " Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may presume to be clearly established, from which one sensible, impartial man would infer that negligence existed; another man, equally impartial, would infer that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. It is assumed that twelve men know more of common affairs of life than does one man ; that they can draw wiser and safer conclusions from admitted facts, thus occurring, than can a single judge."

The recent case of *Sherwood* v. *Insurance Co.*, decided in the New York court of appeals May 30, 1876, found in the Law and Equity Reporter for July 12, 1876, page 51, is directly in point. The court say,— " Where facts depend either upon conflicting evidence, or upon inferences to be drawn from the facts proved, it is always a question for the jury and not for the court."

What is or is not a public place, other than inns, meeting-houses, post-offices, railway stations, and the like, is as much matter of fact to be found by the jury under instructions, as the question of the abandonment of real or personal property—*Jones* v. *Lumber Co.*, 31 N. H. 381 ; or the character of one's possession—*Albin* v. *Lord*, 39 N. H. 196 ; or an agent's authority to make an admission against his principal—*Wendell* v. *Abbott*, 45 N. H. 341 ; or whether beating a horse for a long time one afternoon, with occasional interruptions, constitutes one or several offences—*State* v. *Avery*, 44 N. H. 392 ; or whether a party against whom an estoppel is set up has given reasonable notice of his claim—*Odlin* v. *Gove*, 41 N. H. 465 ; or the inferences, if any, to be drawn from the fact that a party does not testify—*Carter* v. *Beals*, 44 N. H. 408 ; or to whom or what a written instrument relates, where there is a latent ambiguity—*Bartlett* v. *Nottingham*, 8 N. H. 300 ; or whether a highway is obstructed, insufficient, or out of repair—Mor. Dig., p. 411, sec. 341—*ib.*, p. 414, secs. 401 and 405 ; or reasonable time or place ; or reasonable cause to believe a man guilty, or to believe a dog vicious ; or reasonable care, diligence, or skill, in bailments and other cases. Opinion of DOE, J., in *Aldrich* v. *Wright*, 53 N. H. 419, 420, and a multitude of New Hampshire cases cited by him.

The court is generally unwilling and declines to draw inferences and conclusions from circumstances proved, and thereby determine controverted questions of fact, because such things are not among the ordinary duties of the court. Even the assent or request of the parties in a case agreed does not impose upon the court any such duty. *Pray* v. *Burbank*, before cited ; *Woodman* v. *Eastman*, 10 N. H. 359. In the case of an inn, meeting-house, post-office, or railroad station, which, by

mmon consent, are *prima facie* considered public places, the claim at a particular one is a public place may be disputed, and then the question must be determined upon the balance of probabilities. Who shall do this,—the court, or the jury? Manifestly the jury, under proper instructions, just as was done in this very cause.

This action has been pending nearly six years. At large expense it has been twice tried by the jury, resulting both times in a verdict for the plaintiffs. The instructions now under consideration, after full argument and long deliberation by the former court, consisting of five judges, were held correct, none dissenting. Surely, no mere pride of opinion will restrain this court from fully reconsidering its decision upon a point supposed by us to have been so firmly settled the other way as to be beyond the possibility of reversal, or from coming to a different conclusion, unless thoroughly satisfied that there was great, gross, and fundamental error at the trial. It is for the interest of the state that there be an end of litigation; but it is of higher interest that the end be justly reached.

*W. & H. Heywood,* in reply.

We might well submit the question now presented upon the authority of the opinions already delivered in this case. But we desire again to call the attention of the court to the opinion, as reported in 52 N. H. 525, upon the point in the case that this court is now requested to reconsider.

In the first place, it is assumed that the question here raised was properly submitted to the jury, when in fact there was no question for the jury whatever. There was no substantial difference in the evidence of the plaintiffs and the defendant as to the character, situation, and uses of all the six or eight houses situated upon Wentworth's Location at the time of the sale in question, and then inhabited.

As is maintained in the opinion of STANLEY, J., there was no question for the jury, the fact being unquestioned as to the existence of these dwellings in the place where the land offered for sale was situated; and it is a question of law whether the statute required a notice to be posted in the place where the land to be sold lies.

The position taken in the opinion in 52 N. H., that the question here presented is not an open one, and that the term public place has received a technical construction by the decisions in this state, beginning with *Tidd* v. *Smith*, 3 N. H. 178, and coming down to *Wells* v. *Company*, 47 N. H. 235, is not sustained, and cannot be sustained upon the authority of the decisions. In *Tidd* v. *Smith* the decision of the court is, that in the town of Deerfield, in 1820, a shoemaker's shop was not a public place for the purpose of posting an advertisement of a sale of non-resident lands for taxes. The facts were undisputed that the place where the notice was posted was, during part of the time which the statute requires the notice to be posted, a shoemaker's shop, and the size and importance of the town of Deerfield, are

unquestioned facts. And there is no question or suggestion made in that case that there was any necessity for determining to what extent this shop was resorted to by the inhabitants of the vicinity, by a trial by jury or otherwise; but the question is there squarely decided to be a question of law for the decision of the court, and not one of fact for the decision of a jury. And that case gives no support to the position that a notice is not required to be posted in a place where there are none of the places of resort ordinarily termed public places. The case of *Wells* v. *Burbank*, 17 N. H. 393, certainly does not sustain the position, as Chief Justice PARKER expressly says, that the court do not intend to settle the legal construction of the term " public place within the meaning of the statute, or how the court might hold if there had been a dwelling-house within the township, and no place more public ;" but, as there were no inhabitants in the township, there could be no public place, and the maxim *lex non cogit ad impossibilia* is applied. Allowing to this case the full force of a binding decision, it points directly opposite to the course attempted to be given it in the opinion now under consideration by the plaintiffs' counsel.

We have always been aware of the fact that this portion of Judge PARKER'S opinion may well be treated as a *dictum* of the judge who delivered the opinion, as is maintained by Judge STANLEY, and that it is a very questionable interpretation of this statute, which contains the positive provision that the notice shall be posted in the place where the land lies. Rev. Stats., ch. 47, sec. 5. But, when it is considered that the sale of Success, then in question, was made in January, 1842 ; that Success was then an uninhabited wilderness, which could only be reached during the eight weeks prior to the sale by a tramp of several miles on snow-shoes,—that case has no application to the one at bar. And the case of *Wells* v. *Company*, 47 N. H. 235, which follows the decision of *Wells* v. *Burbank* in sustaining a sale of Sargent's Purchase, made in January, 1843, considering the inaccessible location of that place at the time during which the notice would have been posted, can have no weight in the decision as to the necessity of posting a notice in an entirely different place like Wentworth's Location, where there were inhabitants residing all the time. To us it seems absurd to say that it would be an idle ceremony, or an impossibility, to have posted a notice of this sale at a " public place," within the meaning of the statute, in the place where this land lies. Such a construction of the statute would be in direct conflict with the universal course of the decisions, as is shown by Judge STANLEY. Notice is of prime necessity to the validity of a sale of lands for non-payment of taxes, and the statute requirements in that respect must be strictly complied with.

In sec. 5, ch. 47, Rev. Stats., it is provided that the sale shall be in the nearest town in which the court of common pleas is holden, " and such sale shall be advertised therein, as well as in the place where the lands lie." This last provision of the statute is one of great importance, for the purpose of giving to the land-owner and persons who may desire to be bidders full information of the sale ; and the sheriff who

made this sale failed to comply with an important prerequisite of the statute.

But what was the excuse of the sheriff for not posting a notice upon the Location ? The case shows, that for two or three years prior to and up to the time of the sale there had been and were six families residing upon the Location, each family occupying small ordinary dwelling-houses, and a small farm or clearing where their dwelling-house was located; that there was no church, meeting-house, school-house, hotel, office, mechanic's shop, store, sign-post, guide-post or board, box by the wayside for depositing newspapers for subscribers or others, no public highway or bridge, nor any other place except dwelling-houses, at which a notice of said sale might have been posted.

It appears from the evidence of most if not all the plaintiffs' witnesses, that people occasionally came upon and passed through Wentworth's Location, either upon business, or for the purpose of hunting and fishing, and would obtain meals and lodging of the people residing upon the Location, wherever they could get in. And all the settlers would furnish such accommodations as they had, although none of them held out inducements to such travellers.

On the case so stated, the plaintiffs' counsel contend that it was not necessary to post a notice, because there was no public place there. It certainly cannot be contended that the places enumerated, none of which were in the Location, are all of the places that can be called public, for it is quite certain that the list does not specify one description of place that is now more public than almost any other, viz., a railroad depot. Then it is nothing to say that there were none of those places usually considered public *ex vi termini* there. Neither does it exclude the fact of a public place, when it is found that there was no place but a dwelling-house that could be so called; for, in the case of *Gibson* v. *Bailey*, 9 N. H. 175, it appears that the notice of a town-meeting in question was posted at the dwelling-house of Francis Chase, and the return of posting did not show that his house was a public place. Judge PARKER, in delivering the opinion of the court, says that if the facts will warrant it the record might be so amended,—that is, if the facts would warrant an amendment so as to show that Francis Chase's dwelling-house was a public place. If Francis Chase's dwelling-house could not be a public place, the court would have said so, and would not say that it might be proved to be a public place for the purpose of amending the record. In that case the notice was posted March 11, 1823, in the town of Unity, a place which has now been settled over a hundred years. And in 9 N. H. 177, Judge PARKER says, that although the records were not sufficient in point of law, they lead the mind of any ᴏe to the belief that what was requisite was probably done ; that is, ᵗ though the notice was posted at a dwelling-house, still the house probably a public place.

ᵣₐ relied upon by the plaintiffs do not sustain their position, ₃ not referred to clearly show that the true interpretation ᴊublic place," as used in our statute, has not received any

technical or arbitrary construction ; but, on the contrary, the true construction of this term is that it has a relative application, and that a hotel, church, store, &c., places which, in ordinary language, are called public places, are so or not in accordance with their location, and as they are places of resort or otherwise ; and in thinly settled places, where there are no hotels, places of public worship or for other public meetings, stores, &c., that are ordinarily called public places, other places, or conspicuous objects, like a bridge, post by the roadside, or dwelling-house, may be regarded as public. See *Gibson* v. *Bailey*, before cited.

In the case *Russell* v. *Dyer*, 40 N. H. 172, the opinion of Judge BELL (p. 187) shows that the decision in *Tidd* v. *Smith* has reference to a town like Deerfield, one of the oldest incorporated towns of the state, with a population of nearly 2,000, situated in a densely peopled part of the state, with two meeting-houses, eight taverns, six stores, and two post-offices, at the time the decision in that case was made. And to show that the term " public place " is used as a relative one, the Judge says,—" In towns and places where no post-office, tavern, house of public worship, or other place usually regarded as a public place, exists, the words ' public place ' must be construed to mean such places as, in comparison with other places in the same town, are places where the inhabitants and others most frequently meet or resort, or have occasion to be, so that a notice posted there would for that reason be likely to meet public view and attract observation."

It is the logical conclusion, from this review of the case of *Tidd* v. *Smith*, that the term " public place " is a relative term, and in a place where there is no more public place than an ordinary dwelling-house, then a dwelling-house is a public place within the meaning of the statute ; and if the plaintiffs' evidence shew, as they contend, that all the houses upon the Location stood equal as places of common resort, then the notice might well have been posted at any one of those houses. The decision in *Russell* v. *Dyer*, 43 N. H. 396, affirms that above referred to. Judge SARGENT states, in his opinion, that two views might be taken of the term public place—that of the technical and arbitrary one, now claimed by the plaintiffs in the present suit, or that any conspicuous place, open to public observation, could be considered as public places—but says,—" Another view, which was adopted by the court, was, that public place is a relative term, applying to different objects and situations, according to the condition and character of the town or place which formed the point of inquiry ; and, in judging what was to be deemed a public place, regard must be had to the question whether such place is, from situation, circumstances, and use, one of the places where inhabitants and others most frequently meet, or resort, or had occasion to be, so that a notice posted there might, for that reason, be likely to meet public view and attract observation. * * It may be observed that upon either of the last views it is hardly possible to conceive any inhabited place which would not have more than one public place."

This question is alluded to in *Baker* v. *Shepard*, 24 N. H. 212.

Judge BELL says,—" It has never been held, that we are aware, that a stage office, like that described in the case, is a public place within the statute regulating town-meetings; nor is it necessary now to decide it. The case fails to furnish the proper material for such a decision, since a place may be justly deemed a public place in one town, which would have no claim to that character if the question arose in a place of greater population and business."

To show that the practice has been to post a notice in the place where the land lies, although uninhabited, we refer to the following reported cases :

*Cambridge* v. *Chandler*, 6 N. H. 271. The township of Cambridge was not inhabited, yet a notice was posted upon a board set up by the side of the Androscoggin river. And in the case of *Wells* v. *Burbank*, 17 N. H. 393, so much relied upon by the plaintiffs, the case shows (page 395) that the sheriff caused a notice to be posted in Success on a white pine tree near the dam—as public a place as any : the objection to this part of the case being, not that no notice was posted in Success, but to the affidavit of Isaac Hagar, which was offered to show the posting (see page 398). And in *Wells* v. *Company*, 47 N. H. 246, 247, it appears from the evidence of Mr. Meserve, the sheriff who made the sale, that he posted one notice on Sargent's Purchase, and he thought two. And in inhabited places, where there were places no more public than a dwelling-house, the notice has been posted at a dwelling-house,—as, in the case of *Homer* v. *Cilley*, 14 N. H. 85, it appeared that Dame's Gore was inhabited ; that the dwellings of the inhabitants were all alike in regard to being places of common resort ; and the advertisement was posted by the sheriff at the house of Moses Hadley, in said Gore. And the only sales that we have seen, where there was no notice posted in the place where the land lay, are one or two in Coös county, and the original titles to the same lands have been obtained by the claimants ; and none of those sales are relied upon for titles to lands, as was shown at the former argument of this case before this court ; and precedents like these can have no weight in deciding the construction to be given to this provision of the statute when compared with the long line of decisions and precedents now presented to the court by the defendants, and which have been relied and acted upon for such a great length of time.

STANLEY, J., C. C. At the adjourned term, in March, 1875, we were unanimously of the opinion that the verdict should be set aside, for the reason that no notice of the sale by the sheriff, under which the plaintiffs claim, was posted in the Location. The plaintiffs, however, not satisfied with that decision, seasonably moved for a rehearing ; and upon this motion, as well as upon the merits of the question, the parties have been fully heard, both in briefs and orally.

The magnitude of the interests involved, as well as the fact that the opinion heretofore announced seems to overrule a former decision in this cause, in 52 N. H. 518, and other decisions heretofore made,

seemed to demand a full and careful reconsideration of the questions; and I have examined them without any pride of opinion, not unwilling to retrace my steps and rectify any error into which I may have fallen. But after the most careful consideration of the very elaborate and able arguments on behalf of the plaintiffs, I have found nothing that causes me to doubt the correctness of my former conclusion.

Two questions are presented in regard to the necessity of notice: The first is, whether there was a public place on the Location at which the notice might have been posted.

On this branch of the case it is strenuously urged, that the question whether there was a public place there was for the jury; and, by the industry of counsel, numerous authorities, commencing with *Tidd* v. *Smith*, 3 N. H. 178, have been cited and commented on, as tending to sustain this position.

It is distinctly stated in *Tidd* v. *Smith*, that, where the facts are not in dispute, the question as to what is a public place is one of law for the court; and no case can be found which controverts that position. The question is not like the question of what constitutes negligence, or what constitutes a defective highway, or the question of due diligence, skill, reasonable time, probable cause, intention, etc. : it is like the question what constitutes a sale. " Where the facts are proved and not controverted, it is a question of law whether they show a sale; but where material facts are left in doubt, the question is to be decided by the jury, under suitable instructions as to the law." *Fuller* v. *Bean*, 34 N. H. 99 ; *Shepherd* v. *Pressey*, 32 N. H. 49, 56.

In this case, the following facts were not in dispute, to wit, " that the Location was inhabited; that there were six occupied dwelling-houses there ;"—and so much being admitted, it was for the court to say whether there was a public place there within the meaning of the law. That on these undisputed facts the court ought to have found there was a public place, at which notice should have been posted, is clear. That PARKER, C. J., when *Wells* v. *Burbank*, 17 N. H. 393, was decided, entertained the view that upon such facts the statute requirement of notice could not be dispensed with, is equally clear; for he remarks,—" How we might hold were there a dwelling-house, but no place more public, we are not called on to decide."

The term " public," as applied to place, is not an absolute but a relative term, and, as used in the statute, means nothing more than a place relatively and comparatively public,—at all events, not essentially and peculiarly less public than other places in the same town, if there is no place of common resort. It is used in contradistinction to the term " private," and to signify that the notice was to be given in such way as would be likely to have the effect intended, namely, to apprise the tax-payer that his land was to be forfeited for the non-payment of his taxes, at a given time, unless prevented by previous payment, and also to inform the public so that there might be buyers. The law is to be construed, if it can be, so as to effectuate the intention of the law-makers. The chief object of the use of the word public was, to prevent an intentional

or negligent concealment of the notice by posting it at a place not public, as compared with other places in the town,—in a place open to the inspection of all those who chose to examine it.  The evident object of the law is, to have the notice of the sale made as public as circumstances reasonably require, that all who are interested in it, in any way, may have the privilege of attending the sale if they see fit.

The view contended for by the plaintiffs would require us to hold that the term " public " is absolute, and applies to certain things and to no others ; that unless there were some place like a hotel, postoffice, store, or other place of common resort, there was no public place, and consequently notice was not required, or that the tax could not be collected.   Had there been in this Location, instead of six houses, six hundred, all just alike, all occupied, all private in the sense that no public business was transacted at either of them, and that neither was a place of common resort, the rule must be the same, and notice could not be given.   It would then follow that the land could not be sold, from the inability to give the statute notice, or, that one of the first requirements of the statute could be dispensed with, and the land sold without it.

That it was the intention of the legislature to subject all property to taxation is too plain to require argument, and that it was not the intention to take the property of individuals for the non-payment of their taxes, without notice actual or constructive, and an opportunity of payment, is equally plain ; and that the view here suggested tends to accomplish the purposes intended by the statute, both in the collection of the tax and in the notice to the tax-payer, is obvious.

But, assuming that the term public, as applied to place, has a technical meaning,—that by it is meant a place openly and notoriously public, a place of common resort,—the question then arises, whether, in the absence of such a place, the statute requirement of notice can be dispensed with.   In *Lebanon* v. *Griffin*, 45 N. H. 558, the court, BELL, C. J., say,—" We regard the decision in *Russell* v. *Dyer*, 43 N. H. 396, as settling the question that where a party relies upon the provisions of a statute, on which alone his claim of right depends, he must show a compliance with the terms and conditions of the statute.   It is not enough that he shows he did all that was in his power to comply with them."

As sustaining this view, the following, in addition to the authorities heretofore cited, are in point : *Newell* v. *Wheeler*, 48 N. Y. 486, 490, *Westfield* v. *Preston*, 49 N. Y. 349, *Powell* v. *Tuttle*, 3 N. Y. 396, *Sherman* v. *Reade*, 7 Hill. 431, *Beaty* v. *Knowles*, 4 Pet. 152, *Sharp* v. *Speir*, 4 Hill. 76, Cooley's Const. Lim. 522, Sedg. on Stat. and Const. Law (2d ed.) 302, Cooley on Taxation 335, *Reed* v. *Morton*, 9 Mo. 868, *Prindle* v. *Campbell*, 9 Minn. 212, *State* v. *Newark*, 36 N. J. 288, *Moore* v. *Brown*, 4 McLean 211, *Ogden* v. *Harrington*, 6 McLean 418, and *Brown* v. *Veazie*, 25 Me. 359.

It is declared in Art. 15 of the bill of rights, that no man shall be " deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

In *Mayo* v. *Wilson*, 1 N. H. 53, the phrase "law of the land," it is said, means the same thing as "by due process of law,"—that is, according to the course of the common or statute law,—or, as is said in *Hutchins* v. *Edson*, 1 N. H. 139, process warranted by law. When the statute requires notice to be given in a particular way, before a man's estate can be declared forfeited, unless that notice is given, his property is not taken under process warranted by law. It matters not whether the notice which the law requires can be given or not : the law of the land is not complied with unless it is given, and if it cannot be complied with the property cannot be taken.

The maxim *lex non cogit ad impossibilia* is no doubt true, and may be applicable to this case ; but, as suggested by my brother CUSHING, in the matter of the collection of the taxes, the impossible thing, to which the law compelled no one, was the collection of the tax where the provisions of the statutes cannot be complied with,—not the dispensing with the provisions of the statute, especially those intended for the benefit of the person whose land is taken.

It would be strange, indeed, if the legislature, which in all other matters affecting private rights have been so scrupulously exact in requiring notice actual or constructive, should, in the matter of the sale of land for the non-payment of taxes, where the owner's highest interests are concerned, have dispensed with this most important requisite. No suit, however trifling, can be prosecuted to final judgment without some notice, actual or constructive. The statute, after pointing out how notice shall be given in almost every conceivable case, provides that in any case where no form of notice is specified in the statute, or the notice therein specified cannot be given in the mode prescribed, the action may be entered in court, and such notice ordered as the case requires. Gen. Stats., ch. 204, sec. 9, p. 414. That the law should require such exactness and nicety in the matter of notice, in all suits, however small the amount in controversy, and allow it to be dispensed with in a matter so important as the sale of land for taxes, cannot be seriously entertained.

The injustice of such a view is well illustrated in this case, where property worth several thousand dollars was sold for the non-payment of a tax of three dollars. Were the statute silent upon the subject of notice, very strong reasons might be urged why it was necessary. The state does not seek to confiscate the property of its citizens. All it attempts to do is to enforce the payment of their taxes. Notice to the owner, that unless the taxes were paid his estate would be sold, would tend to accomplish this result. Again : for the purpose of collecting the tax by a sale, it is essential that there should be buyers present, and the posting of a notice in the place where the lands to be sold are situated would tend to this result. So such notice would apprise the occupants of the lands that they were to be sold, and their rights as occupants might be determined, and they would have an opportunity to be present and protect their interests.

In an able opinion by HOLMES, J., in *Abbott* v. *Lindenbower*, 42 Mo.,

it is held that it is beyond the power of the legislature to authorize a proceeding by which land is sold for taxes without any notice at all; and the same view was enforced by the high court of errors and appeals, in Mississippi, in an opinion by HARRIS, J., in *Griffin* v. *Mixon*, 38 Miss. 424, 433.

In the course of that opinion, he says it is for those who claim to derive a right under a power so extraordinary to inform us whence it is derived and where it may be found; or in what moment of folly or infatuation an intelligent people, deserving rational liberty, cautious of restraint and jealous of power, have thus abandoned one of the cardinal rights, for the protection of which free governments are instituted. These remarks seem to me eminently just and sound. It is one of the cardinal principles of the law that no man shall be condemned unheard, and no man shall be despoiled of his goods or estate until after notice, actual or constructive, and an opportunity to be heard.

But we are not called on to hold that the legislature could not authorize the sale of land for the non-payment of taxes without notice. All the case requires is, that we should hold a sale impossible and unauthorized where the notice required by the statute has not been given.

The opinion in this case, in 52 N. H., is forcibly urged upon our attention, and I have examined it. Its examination satisfies me that the court did not accept the plaintiffs' view as a correct exposition of the law upon this question; but they felt obliged to adopt it, under the belief that the question was not a new one, and that many titles might be disturbed if any other view were adopted. It is quite apparent, I think, that the learned judge who delivered the opinion did not investigate very fully, with the view of determining to what extent this question had been settled by previous decisions; and the same is true in regard to the case of *Wells* v. *Company*, 47 N. H. 235, 255. Let us see if we are correct.

In 52 N. H. 526, the court say,—" If the construction given to the statute, from 1825—*Tidd* v. *Smith*, 3 N. H. 178—to the present time, is erroneous, the introduction of the true construction," etc. The only construction given to the statute in *Tidd* v. *Smith* was, that a shoemaker's shop was not a public place, and consequently the tax title failed. It was not held or intimated, nor was there any occasion to hold, that the law did not in all cases require notice to be given as required by statute; and if notice could not be given it might be dispensed with, and the title would be valid.

No case can be found in which such views are stated, until the decision in *Wells* v. *Burbank, supra.* That was the first case in which it was held that notice might be dispensed with where there was no public place, and that case was not published until 1864. The question in that case was not like the question in the present, for the town, the title to which was in dispute, was entirely uninhabited; nor was the decision of this point necessary to the decision of the cause. The court held the tax title invalid on other grounds,—in fact, sustaining the position here taken, that there must be a strict compliance with the

requirements of the law,—holding the title invalid, because, among other things, the tax was nine cents too large, the learned chief-justice saying, the maxim *do minimis non curat lex* cannot save it. Upon the matter of notice, the language of the chief-justice is identical with that used by him as counsel in *Cambridge* v. *Chandler*, 6 N. H. 271 ; and it may not be improper to say, that his views upon a question not vital to the case may have been in a great measure affected, if not controlled, by similar views which as counsel he had previously entertained and urged upon the attention of the court. The whole force of the suggestions of the court, in 52 N. H., is against the views urged upon us here, and against the validity of the title upon which the plaintiffs rely. The fallacy of the argument in *Wells* v. *Burbank*, and the subsequent cases, is clearly shown ; and it is evident that no such conclusion as was reached would have been, had the court felt themselves not bound by the prior decisions, and if they had had the evidence, laid before this court, as to the number of titles depending upon proceedings of this kind. It is clear that the court felt that the doctrine they were called upon to sanction was at variance with the fundamental principles upon which all attempts to take, by forced alienation, property from one person and transfer it to another are based.

The defendant objects, that, the action being in the name of the husband and wife, and the declaration alleging seizin in the right of the wife, and the evidence showing that she was sole seized, there was a misjoinder; and I think this objection is well taken. Gen. Stats., ch. 164, secs. 1, 13 ; *Whitcher* v. *Burton*, 48 N. H. 157 ; *Cooper* v. *Alger*, 51 N. H. 172. But this objection may be cured by striking out the name of the plaintiff improperly joined. Laws of 1872, ch. 39.

The action of review was brought February term, 1873, after the passage of the act of 1872, and, for the purposes of amendment, it is to be regarded as a new action. *Badger* v. *Gilmore*, 37 N. H. 459 ; *Sanford* v. *Candia*, 54 N. H. 519.

It is also objected, that the amendment of the account of sale was improperly allowed ; but this objection cannot be sustained. The amendments were allowed by the presiding justice at the trial term, and no question of discretion is reserved. The only question is, whether the sheriff had the power to make those amendments, the clerk who made the record being dead.

The clerk was not an officer known to the law. He was simply the servant of the sheriff. The acts of the clerk were those of the sheriff ; and the allowance of the amendment falls within the rule laid down in *Avery* v. *Bowman*, 39 N. H. 393.

· The objection, that the account of sale was not returned to the proper court, is not well taken. The certificate of the clerk upon the original return is not the only evidence as to the place where it was filed ; and the case shows that the copy of the return produced was certified to by the clerk of the court, having by law the custody of such papers. We think this is sufficient.

The evidence contained in the affidavit of Charles Bellows, stating

the day when the notice was posted, and that he took it down on the day of the sale, and that, in his belief, it remained posted during the time required by law, was evidence tending to show a compliance with the law, and was properly received; and from the fact of its being posted and of its being taken down, as stated in the affidavit, the court or jury would be justified in finding a compliance with the law in these respects.

The objection that the tax was not seasonably assessed was decided, substantially, in this case, in 52 N. H. 525, and we see no reason to doubt the correctness of that decision in that respect.

Several other objections were taken to the proceedings in the sale of the property in question, and to the evidence admitted on the trial, but, as I am of the opinion that the plaintiffs' title is fatally defective, I have not considered it necessary to express any opinion upon them.

CUSHING, C. J. I have no desire to add anything to what I have before said.

RAND, J., C. C. This case has been very fully and ably argued on the motion for a rehearing, and I have endeavored to reconsider it, free from any influence derived from pride of opinion. "To admit that we have been in the wrong, is a proof that we are wiser than we were." But one ought to be satisfied that he has been in the wrong before making the admission. I am not so satisfied. On the contrary, the reconsideration of the cause has strengthened my conviction that the result reached by the court is right.

It is urged by the plaintiffs, that whether or not a certain place is a public place is a mixed question of law and fact, which ought to go to the jury. But when the facts are admitted, the question is one of law. Nothing can be clearer than that. It was settled in *Tidd* v. *Smith.* Now, it is conceded that very many facts are in dispute. But this is a matter of no importance, provided enough facts are admitted to raise a question of law upon which the case may be decided. It is admitted that, at the time of the tax sale, six families resided in Wentworth's Location, in small, ordinary dwelling-houses, and that each head of a family occupied a small farm or clearing where his dwelling-house was located. I maintain that these admitted facts are sufficient to authorize the court to hold that there must have been a public place in Wentworth's Location on the day of the sale. What is a " public place " ? What is the meaning of that expression in the statute.? It is contended that, *ex vi termini,* a man's *private* house cannot be a *public* place. But surely no force is added to the argument by calling a dwelling-house a private house, in order to make a contrast between the two expressions. The question still remains the same, May not an ordinary dwelling-house be a public place, according to the meaning of those words in the statute ?

If any one thing in this controversy can be regarded as settled by authority, it is that the expression " public place " is a relative and not an absolute expression ; that what is a public place in one locality may not be in another. This being conceded, there is an almost irresistible force in the argument that the court should so interpret the statute, if possible, as to give publicity to tax sales.

But it is urged that the doctrine established by the court is revolutionary. If so, it is perfectly clear that the turning-point in the case must have made its appearance in some previous case, and been disposed of by a contradictory decision. Where can that decision be found ? We should not expect to find it anywhere in our reports before *Wells* v. *Burbank*, which was decided in 1845, and in which Judge PARKER declares, inem phatic language, already quoted, that the court intended to leave the precise question involved in this case open and undecided.

I am not aware that the point makes its appearance again until we get to *Russell* v. *Dyer*, decided in 1861. In this case, Judge SARGENT observes that " it is hardly possible to conceive any inhabited place which would not have more than one public place." The plaintiffs say, in their brief, that this observation is " of the loosest kind of *obiter dicta*." Admit that it is an *obiter dictum*, I cannot discover that it is any looser than *obiter dicta* usually are. On the contrary, it seems to me to be the cautious and deliberate statement, by a learned and able judge, of doctrine regarded as unquestionably sound. It ought at least to be sufficient to notify purchasers at tax sales that there may be some risk in bidding off property located in places where there are several inhabited dwelling-houses, and when no notice has been posted. It is most unquestionably true that New Hampshire courts have repeatedly held that " public place " is a relative term, and have never held, in a single case, that at tax sale of property situated in an inhabited place, notice could be dispensed with. What precedent, then, stands in the way of deciding this case, as it ought to be decided, upon principle ? I cannot see that there is any. As to how it should be decided upon principle, I will merely refer to the argument of Judge DOE, which was quoted by me in my former opinion. I think the argument is unanswerable.

*Verdict set aside and new trial granted, and motion for rehearing denied.*